### AUNT JEMIMA MILLS CO. v. BLAIR MILLING CO.

(Court of Appeals of District of Columbia. Submitted January 10, 1921. Decided February 7, 1921.)

No. 1356.

1. **Trade-marks and trade-names** ⬳43—**Picture of negro held to infringe bust picture of negress.**

    The owner of the well-known trade-mark for Aunt Jemima's pancake flour, consisting of a bust picture of a smiling negress with a handkerchief wrapped about her head and shoulders, can oppose an application for registration of a mark for similar goods, consisting of the word "Sambo," with the representation of a negro having a white cap and wearing a long apron, since, even though the products were called for by the name, the similarity of the pictures might deceive purchasers.

2. **Trade-marks and trade-names** ⬳43—**Adoption of similar mark implies intention to take advantage of reputation.**

    Where a new manufacturer adopts as his trade-mark a representation similar to that of an existing well-known trade-mark of a manufacturer of the same class of goods in the same vicinity, the only inference possible is that of gaining advantage from the wide reputation of the established manufacturer.

3. **Trade-marks and trade-names** ⬳44—**Doubts resolved in favor of opposer.**

    In determining an opposition to registration of a trade-mark, doubts will be resolved in favor of the opposer.

    Smyth, Chief Justice, dissenting.

Appeal from the Commissioner of Patents.

Application by the Blair Milling Company for registration of a trade-mark, opposed by the Aunt Jemima Mills Company. From a decision of the Commissioner of Patents, dismissing the notice of opposition, the opposer appeals. Reversed.

Francis M. Phelps, of Washington, D. C., and E. S. Rogers, of Chicago, Ill., for appellant.

Hervey S. Knight, of Washington, D. C., Arthur C. Brown, of Kansas City, Mo., and James W. Orr, of Atchison, Kan., for appellee.

VAN ORSDEL, Associate Justice. Appellant company, a Delaware corporation, with its place of business at St. Joseph, Mo., filed its opposition to the registration of a trade-mark by appellee company, a Kansas corporation, doing business at Atchison, Kan., 23 miles from St. Joseph.

Appellant's device is the well-known "Aunt Jemima" trade-mark for self-rising buckwheat flour. It consists of the words "Aunt Jemima's," having underneath the bust picture of a full-faced smiling negress, with a handkerchief wrapped about her head and shoulders. This mark has been used by appellant company and its predecessor in business at St. Joseph, Mo., on pancake flour since 1889, and on buckwheat flour since 1904. Appellee's mark consists of the word "Sambo," having underneath the representation of a full-faced, clean-shaven, smiling negro, having a white cap on his head and wearing a long apron, bearing in one hand a plate of smoking cakes, and in the other hand a cake turner. This mark has been used by appellee company at Atchison, Kan., on pancake flour since 1913, and on pancake buckwheat flour since August 7, 1916.

The opposition is based upon the similarity of the marks and the likelihood of confusion in trade, when the marks are applied to goods of the same descriptive properties.

From an order dismissing the notice of opposition, this appeal was taken.

[1] The goods on which the marks are used are the same, and we think the marks are deceptively similar. It is urged that the goods would be distinguished as "Sambo" and "Aunt Jemima's" brands, but we doubt this conclusion. The Aunt Jemima flour has become so widely known that a glance at the picture would satisfy the average purchaser. In other words, while the goods are known by the name, the picture is the distinguishing feature by which the goods are visually identified.

In determining the question of possible confusion and resulting damage, it is proper to consider the manner in which appellee's mark may be used. Cartons were produced at bar as exhibits, on which the lower part of the figure of the negro cook was so covered with printed matter that to the casual observer only the shoulders and head were plainly visible. Should registration be granted, the printed matter could be extended until only a bust picture remained, and nothing would prevent the registrant from using whatever coloring it desired in setting

forth the mark, so long as the style of dress and the features of the negro were retained.

We think our opinion in the case of Wayne County Preserving Co. v. Burt Olney Canning Co., 32 App. D. C. 279, is controlling here. There, as here, the marks were used on the same kind of goods. There, as here, the parties were located in neighboring towns, and there, as here, one was a bust picture and the other a full-length figure. The mark of the appellant company in that case consisted of a bust portrait of Gen. Wayne in colonial military uniform, while the mark of appellee company consisted of a full length figure of a colonial military officer designated by the words "Col. Willett."

Considering the similarity of the marks, the court said:

"These marks, when appearing on the canned goods of the respective parties, exposed to the public on the shelves of the retailer, are so similar as to be likely to cause confusion; and where, as in this case, there is no evidence on that subject, except the marks themselves, it is the duty of the court to protect the prior registrant and user from the probability of any such occurrence. It is strangely coincident that appellee, engaged in the same business as appellant, and located in the adjoining county to where appellant has used his mark for many years, should select a mark so similar. The property right in trade-marks is a valuable one, and is entitled to protection from those who would profit by its imitation, and the courts should resolve the doubt, if any exists, in favor of the prior registrant."

[2] So here the adoption of the mark before us by appellee company, situated only 23 miles from where appellant company has for years been manufacturing and widely distributing its goods bearing the Aunt Jemima mark, will admit of but one inference—that of gaining advantage from the wide reputation established by appellant in the goods bearing its mark.

[3] While the case is a close one, the court will adhere to its rule and resolve the doubt in favor of the opposer. As was said by Mr. Chief Justice Smyth, in William Waltke & Co. v. Geo. H. Schafer & Co., 263 Fed. 650, 49 App. D. C. 254:

"The case is not free from difficulty, but where there is doubt the courts resolve it against the newcomer. Lambert Pharmacal Co. v. Mentho-Listine Chemical Co., 47 App. D. C. 197. The reason for this is, as has been said by this court more than once, that the field from which a person may select a trade-mark is practically unlimited, and hence there is no excuse for his impinging upon, or even closely approaching, the mark of his business rival. O. & W. Thum Co. v. Dickinson, 46 App. D. C. 306; Florence Mfg. Co. v. J. E. Dowd & Co., 178 Fed. 75, 101 C. C. A. 565. Where he does so he is open to the suspicion that his purpose is to appropriate to himself some of the good will of his competitor."

The decision of the Commissioner of Patents is reversed.
Reversed.

SMYTH, Chief Justice, dissents.

Mr. Justice HITZ, of the Supreme Court of the District of Columbia, sat with the court in the hearing and determination of this appeal, in the place of Mr. Justice ROBB.