**B. F. GOODRICH CO. v. HOCKMEYER (ZIP–ON MFG. CO. Substituted).**

Patent Appeal No. 2208.

Court of Customs and Patent Appeals.

April 14, 1930.

Eakin & Avery, of Akron, Ohio (William D. Eakin, of Akron, Ohio, of counsel), for appellant.

James R. Hodder, of Boston, Mass., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Commissioner of Patents affirming the decision of the Examiner of Interferences denying the application of appellant for the cancellation of trade-mark registration No. 192,-312, issued December 2, 1924, to Clive E. Hockmeyer (thereafter, when the Zip-On Manufacturing Company was organized, assigned to that company), for the trade-mark "Zip-On" for use on "leggings; men's, women's, and children's knicker-bockers; children's rompers, children's sleeping and carriage suits, children's hats, children's coats, children's suits, children's overalls, children's play suits, children's bath robes, children's blouses, children's bloomers."

It was claimed by appellant in its application for cancellation that it had used the word "Zipper" as a trade-mark for "boots made of rubber and fabric, and more especially overshoes made of rubber and fabric," since June, 1923; that on April 7, 1925, appellant obtained registration No. 197,090, of the word "Zipper" as a trade-mark for "boots made of rubber and fabric"; and that appellee had not used the mark "Zip-On" prior to March, 1924.

It appears from the record that, with the exception of hats, the articles above enumerated upon which the trade-mark "Zip-On" is used by appellee, as well as those upon which the trade-mark "Zipper" is used by appellant, are equipped with "hookless fasteners." The fasteners are obtained by each of the parties from the Hookless Fastener Company. Appellant is licensed to use them solely on rubber footwear, while appellee has the right to use them on the various articles enumerated in its trade-mark registration. It further appears from the record that appellant, prior to the year 1918, manufactured and sold various articles of wearing apparel composed of "all-rubber clothing, as well as double-texture, cloth, rubberized raincoats, caps, and, in fact, clothing for all purposes, both for dress and for work wear"; and that "Double texture refers to two distinct pieces of cloth which are bound together with a rubber binder, making them, to all intents and purposes, one piece; and the rubber binder between the two fabrics gives the waterproof properties."

It further appears that the following articles were formerly manufactured and sold by appellant: "Raincoats; rubber leggings; rubber blankets; rubber capes; rubber caps; rubber hats; rubber fishing shirts; policeman's rubber coats; rubber jackets, being short coats; firemen's rubber-coated leggings; firemen's rubber jackets, being short rubber coats; rubber service-cap covers for police caps; miner's white rubber coats; acid-resisting rubber suits, consisting of hat and jacket, or blouse; double-coated rubber wash-aprons"; that the manufacture of many of these articles was discontinued by appellant due to the fact that during the "World War" the government "required these facilities for the manufacture of gas-masks; and this department was disbanded to make room for that work"; and that, while appellant manufactures "cloth and rubber in the sheeting form similar to that which was formerly used in clothing" which is now purchased by manufacturers of various articles, it has not resumed the manufacture of

those articles of wearing apparel, due to the present unfavorable market conditions. It appears, however, that appellant still has the necessary equipment for the manufacture of such articles, and that, in addition to boots and overshoes, it now manufactures the following named articles of wearing apparel: "Rubber bathing-caps, rubber bathing belts, woolen lumbermen's socks, short woolen hose or socks, felt boots, knit shoes with felt soles, leather shoes with rubber-composition soles."

The tribunals of the Patent Office held that the goods of the respective parties were not of the same descriptive properties. With regard to the similarity of the trade-marks, the Commissioner of Patents made the following observations:

"Both marks involved are formed from the word 'Zip.' The record shows that long prior to the adoption and use by the petitioner of its trade-mark 'Zipper,' the word 'Zip' and other words comprising the word 'Zip' had been adopted and used by others as trade-marks for various articles of merchandise. The registrant in its motion to dismiss the petition for cancellation lists forty-six registrations consisting of the word 'Zip,' or other words comprising the word 'Zip.' Of these special mention may be made of Registration No. 119,139, October 23, 1917, of the trade-mark 'Zip' for snap fasteners. The goods manufactured and sold by the parties to this proceeding and to which their respective marks are appropriated, however, are not fasteners. The slide fasteners used by them, according to this record, are manufactured and sold by the Hookless Fastener Company.

"In view of the prior adoption and use by many others of the word 'Zip' and other words comprising the word 'Zip,' as trade-marks on various articles of merchandise, the members of the public naturally exercise care in discriminating distinctions, between such marks, and when exercising such care they would not be apt to confuse the mark 'Zip-On,' as printed, with the mark 'Zipper,' even though the two marks were appropriated to goods of the same descriptive properties; and in view of such prior adoption and use of marks consisting of or comprising the word 'Zip,' it seems evident that the petitioner's trade-mark rights under his trade-mark 'Zipper' are confined within narrow limits."

The record clearly establishes that appellant has expended considerable time and money in advertising its trade-mark "Zipper," and that appellee has expended a less amount in advertising its trade-mark "Zip-

On." It appears that the word "Zip" and other words comprising the word "Zip" have been registered as trade-marks for various articles. It does not appear, however, that any of these marks have been registered for use on clothing or wearing apparel.

It is claimed by appellant that the goods of the respective parties possess the same descriptive properties; that the mark "Zip-On" is confusingly similar to the mark "Zipper"; that the mark "Zipper" has been popularized by appellant; and that the use of the word "Zip-On" as a trade-mark on the articles of clothing covered by appellee's registration would cause confusion in the trade, dilute the popularity of appellant's trade-mark, subtract from its established good will, and lessen the distinctiveness of appellant's trade-mark. Many other claims are made by appellant, but we think they need not be stated here.

Counsel for appellee, on the contrary, contends that the goods of the respective parties do not possess the same descriptive properties, and that neither party is entitled to the exclusive use of "the common word or root 'Zip.'" We quote from the brief of counsel: "The use of the word 'Zip' is a common English suggestive of speed, and right here we will contend that the entire difficulty into which the Goodrich Co. has involved this Registrant and others is because of the unfair, improper, and inequitable attempt of the Goodrich Co. to monopolize this word 'Zip,' despite the fact that it is a common English word largely descriptive, or at least suggestive, of hookless or slide fasteners—a point not involved in this proceeding. Because Goodrich made the mistake of utilizing, popularizing and advertising a trade-mark which incorporated a common English word does not give such company the right to cull from the public domain the word 'Zip' and exclude all people in other lines of industry and making other goods from a different use of 'Zip.'"

It was conceded by counsel for appellee, at the time of the oral argument in this court, that the word "Zip-On" was similar to the word "Zipper," and that, if the goods of the parties possessed the same descriptive properties, appellee would not be entitled to have the word "Zip-On" registered as a trademark.

The pertinent part of section 5 of the Trade-Mark Act of February 20, 1905 (15 USCA § 85), reads as follows:

"Sec. 5. That no mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trade-mark on account of the nature of such mark unless such mark— * * *

"*Provided,* That trade-marks which are identical with a registered or known trademark owned and in use by another and appropriated to merchandise of the same descriptive properties, or which so nearly resemble a registered or known trade-mark owned, and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers shall not be registered. * * * *"

Section 13 of that act (15 USCA § 93) provides for the cancellation of the registration of trade-marks, where it is made to appear that the registrant was not entitled to the use of the mark at the date of his application for registration.

Section 16 (15 USCA § 96) provides in part "that the registration of a trade-mark under the provisions of this act shall be prima facie evidence of ownership."

The language "merchandise of the same descriptive properties" contained in section 5 has given the courts considerable concern. It has been held in many cases that the Congress intended to use the words "same descriptive properties" "in the natural and ordinary sense" and that "two trade-marks may be said to be appropriated to merchandise of the same descriptive properties, in the sense meant by the statute, when the general and essential characteristics of the goods are the same." D. & C. Co., Inc., v. Everett Fruit Products Co., 57 App. D. C. 263, 20 F.(2d) 279, and cases therein cited. The difficulty with this interpretation is that it is as broad, comprehensive, and indefinite as the words interpreted, and, in order that it may be given application, it is necessary to again resort to interpretation. The net result has been a construction of the statute so broad and indefinite as to be of little help either to the courts or to litigants, or a construction so narrow and limited as to thwart the evident purpose of the Congress. Recognizing this situation, the courts and the Patent Office tribunals have found it necessary, in a large number of cases, to arbitrarily and summarily hold that the goods of the contending parties did or did not, as the case might be, possess the same descriptive properties. Sometimes, where the goods of the parties were not identical, the courts have been compelled to resort to similarity of use, con-

struction, and other tests of similarity in an effort to apply the "general and essential characteristics" rule. Obviously, although it was not so stated, confusion, either with respect to the goods or their origin, was the dominant and controlling influence in those decisions. For, whether the similarity tests be considered severally or jointly, the question of confusion is necessarily present, and, in the final analysis, is the controlling factor. So, in the case of California Packing Corporation v. Price-Booker Mfg. Co., 52 App. D. C. 259, 285 F. 993, 995, the Court of Appeals of the District of Columbia said:

"The paragraph implies that, if *the mark would not distinguish the goods of its owner from other goods of the same class, it should be denied registration.* No interpretation of the phrase 'the same descriptive properties,' which occurs in the same section, applicable to all cases alike, has ever been given, so far as we know. The courts have been content with deciding in each case as it arose either that the goods did or did not possess those qualities, without going further. *We think the dominant purpose of the part of the section here involved is the prevention of confusion and deception. If the use of the later mark would be likely to produce either, the mark should be rejected. Whenever it appears that confusion might result, it is because the goods have the same descriptive properties.* We reason from the effect to the cause. For instance, no one would be deceived into believing that a can of tobacco and a can of peas were put out by the same concern, simply because they bore similar trade-marks.

"Turning now to the goods of the parties to this litigation, we find that they are sold in the same stores, are put out in small containers, are used in connection with each other, and are associated in the public mind. We think that a person seeing the mark in question on a container of pickles would be likely to assume that they were produced by the same concern as that which produced the canned fruits or vegetables bearing a similar mark. At least we are not clearly convinced that he would not be, and therefore we hold against the newcomer." (Italics ours.)

In the case of I. E. Palmer Co. v. Nashua Manufacturing Co., 34 F.(2d) 1002, 1004, we referred to the rule announced in the California Packing Corporation Case and said: "While we do not mean to be understood as saying that the rule thus announced is sufficiently full and comprehensive to cover every possible situation, we are, nevertheless, of the opinion that it was the intention of the Congress to prevent, if possible, confusion, mistake, and deceit in the use of trade-marks. Obviously, merchandise of contending parties may be dissimilar, and yet the trade-marks thereon may so nearly resemble each other as to cause, when the merchandise is sold to the general public, confusion and mistake, and to make deceit an easy matter of accomplishment."

In the case of In re S. C. Herbst Importing Co., 30 App. D. C. 297, 298, the Court of Appeals of the District of Columbia said: *"The purpose of the act was to prevent, and not to promote, confusion; to protect, and not to deceive, the public.* The language used empowers the Commissioner to exercise his discretion as to whether a proposed mark should be registered. If in his opinion its registration will 'be likely to cause confusion or mistake in the mind of the public' or to 'deceive purchasers,' he is bound to reject it." (Italics ours.)

Other decisions might be cited in support of the rule announced in the California Packing Corporation v. Price-Booker Mfg. Co., In re S. C. Herbst Importing Co. and I. E. Palmer Co. v. Nashua Manufacturing Co. Cases, supra.

In the case of American Steel Foundries v. Robertson, Commissioner, et al., 269 U. S. 372, 46 S. Ct. 160, 162, 70 L. Ed. 317, the Supreme Court, speaking with reference to the language contained in the second proviso of section 5, supra, said:

"The general doctrine is that equity not only will enjoin the appropriation and use of a trade-mark or trade-name, where it is completely identical with the name of the corporation, but will enjoin such appropriation and use where the resemblance is so close as to be likely to produce confusion as to such identity, to the injury of the corporation to which the name belongs. Cape May Yacht Club v. Cape May Yacht & Country Club, 81 N. J. Eq. 454, 458, 86 A. 972; Armington & Sims v. Palmer, 21 R. I. 109, 115, 42 A. 308, 43 L. R. A. 95, 79 Am. St. Rep. 786. Judicial interference will depend upon the facts proved and found in each case. Hendriks v. Montagu, L. R. 17 Ch. Div. 638, 648; Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 469–471, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769.

*"These principles, it must be assumed, were in mind when Congress came to enact the registration statute. And, since that body has been given no power to legislate upon the substantive law of trade-marks, it reasonably*

*may be assumed, also, that to the extent the contrary does not appear from the statute, the intention was to allow the registration of such marks as that law, and the general law of unfair competition of which it is a part, recognized as legitimate.* The House committee on patents, in reporting the bill which upon enactment became the registration statute in question, said:

" 'Section 5 of the proposed bill we believe will permit the registration of all marks which could, under the common law as expounded by the courts, be the subject of a trade-mark and become the exclusive property of the party using the same as his trademark.' Report No. 3147, Dec. 19, 1904, N. of R. 58th Cong. 3d Sess.

"The provision, therefore, that no mark consisting merely in the name of a corporation shall be registered, is to be construed in harmony with those established principles in respect of the appropriation of corporate names to which we have referred. Where the appropriation of the corporate name is complete, the rule of the statute, by its own terms, is absolute, and the proposed mark must be denied registration, without more; but where less than the whole name has been appropriated, the right of registration will turn upon whether it appears that such partial appropriation is of such character and extent that, under the facts of the particular case, it is calculated to deceive or confuse the public to the injury of the corporation to which the name belongs.

"The fact, for example, that the articles upon which the mark is used are not of the same description as those put out by the corporation, is entitled to weight, since the probability of such confusion and injury in that situation obviously is more remote than where the articles are of like kind. The cases, naturally, present varying degrees of difficulty for the application of the rule. *Primarily the power and the duty rests with the Commissioner of Patents to determine the question in each case, in the exercise of an instructed judgment upon a consideration of all the pertinent facts.*" (Italics ours.)

If, as the court said in the above case, citing United Drug Co. v. Rectanus Co., 248 U. S. 90, 97, 39 S. Ct. 48, 63 L. Ed. 141; Hanover Star Mill. Co. v. Metcalf, 240 U. S. 403, 413, 414, 36 S. Ct. 357, 60 L. Ed. 713, " 'The law of trade-marks is but a part of the broader law of unfair competition' (Id.), the general purpose of which is to prevent one person from passing off his goods or his business as the goods or business of another,"

and, if the general principles of equity applicable to the law of trade-marks "were in mind when Congress came to enact the registration statute" it would seem to be obvious that the provisions of section 5 (15 USCA § 85), under consideration here, should not be given a literal construction, but, except where a contrary intention clearly appears from the statute, should be construed in harmony with the general principles of equity applicable to the law of trade-marks.

Accordingly, the language in the first *proviso* of section 5 should be construed, in connection with the language contained in the first part of section 5, "that no mark by which the goods of the owner of the mark *may be distinguished from* other *goods of the same class* shall be refused registration as a trade-mark on account of the nature of such mark unless such mark." (Italics ours.)

It would seem to be evident then, that the language "same descriptive properties" contained in the first *proviso* was intended by the Congress to relate to goods of the same general class; that such language was not intended to be more or less comprehensive than the term "class" used in the first part of the section; that the language of the first *proviso* was intended to state the converse of the mandates of the first part of the section, namely, that a mark by which the goods of the owner of the mark may not be distinguished from other goods of the same class *shall not be registered*; and, that, keeping in mind the principles of equity as applied to the law of trade-marks, the words "same class" and "same descriptive properties" were intended to be given a limited or an extended meaning and application, according to whether or not the use of identical or similar trade-marks would be likely to cause confusion or mistake in the mind of the public or to deceive purchasers. And, of course, in this connection, the use, appearance, and structure of the articles, the similarity or the lack of similarity of the packages or containers in which, the place or places where, and the people to whom, they were sold should be considered.

While it is true that the statute was not intended to be as comprehensive as the principles of equity applicable to the law of trade-marks, it certainly was not the purpose of the Congress to enact a statute opposed to those principles. To so hold would be but to deny that the statute was enacted in the light of common sense. Such a construction would require the registration of trade-marks which would not be recognized as legitimate by the

courts under the substantive law of trade-marks.

The trade-mark "Zipper" was used by appellant long prior to the adoption and use by appellee of the mark "Zip-On." It was undoubtedly adopted because of the peculiar characteristics of the hookless fasteners used on, and made a distinctive feature of, appellant's goods. The word "Zip" is not only suggestive of speed but of sound. "Zipper" means to fasten with a "Zip,". while "Zip-On" means to put on with a "Zip." Accordingly, the words not only mean substantially the same thing, but the marks are of such close resemblance as to make it perfectly clear that if used upon goods of the same descriptive properties, confusion, mistake, and deceit would result.

It appears from the record that appellant has in the past manufactured various articles of wearing apparel, many of which were similar, not only in name but in use, to many of the articles manufactured by appellee. It would seem to be clear that appellant ought to have the right to extend the use of its mark, at least, to the various articles of wearing apparel formerly manufactured by it, when it resumes the manufacture and sale of such articles. This conclusion is in conformity with the general rule "that the owner of a trade-mark will not be hampered or embarrassed in the legitimate extension of his business by the registration of the mark to another." Canton Culvert & Silo Co. v. Consolidated Car-Heating Co., 44 App. D. C. 491, 493, and cases cited. Moreover, we should ever be mindful of the well-established rule that, in a close case, doubt should be resolved "against the newcomer." The reason for this rule is that the field from which a trade-mark may be selected is as broad and unlimited as the vision and imagination of the human mind, and there can be no excuse, except. in cases where the fields of activity are widely separated, for one to adopt and use a trade-mark, confusingly similar to the established mark of another, upon goods of the same general class. Aunt Jemima Mills Co. v. Blair Milling Co., 50 App. D. C. 281, 270 F. 1021.

It is argued by counsel for appellee that the word "Zip" is a common English word and that appellant has no right to the exclusive use of it as a trade-mark. The answer to this argument is that appellant's trade-mark is "Zipper," not "Zip." Nor is appellant entitled to the exclusive use of every trade-mark formed by the use of the word "Zip." But surely, if the statute providing for the registration of trade-marks is not to be a weapon for the perpetration of fraud and deceit, registrants of trade-marks are entitled to some measure of protection from those who designedly or otherwise closely simulate such marks, and, due to confusion in the mind of the public, trade on the popularity and good will of the registrant. While there is evidence in the record that appellee did not designedly simulate appellant's trade-mark and had no intention of trading on the good will and popularity of appellant, nevertheless, its goods are sold in the same territory as those of appellant, and the likelihood of confusion and mistake in the mind of the public and corresponding injury to appellant is not altered by evidence of appellee's good faith.

The articles upon which the respective trade-marks are used are of the same general class—wearing apparel. Applying the rule hereinbefore stated, we are of opinion that the use by appellee of the trade-mark "Zip-On" on the articles of wearing apparel enumerated in its trade-mark registration, in view of the prior use of the trade-mark "Zipper" on boots and overshoes by appellant, would be likely to cause confusion or mistake in the mind of the public and to deceive purchasers. We hold, therefore, that the goods of the respective parties are of the same general class; that they possess the same descriptive properties; that the marks are confusingly similar; and that appellee's registration of the trade-mark "Zip-On" should be canceled.

The decision is reversed.

Reversed.

LENROOT, Associate Judge (specially concurring).

I concur in the conclusion reached in this case, but I cannot agree to the following statement in the opinion of the majority: "* * * The words 'same class' and 'same descriptive properties' were intended to be given a limited or an extended meaning and application, according to whether or not the use of identical or similar trade-marks would be likely to cause confusion or mistake in the mind of the public or to deceive purchasers."

It seems to me that the language quoted clearly violates the express terms of section 5 of the Trade-Mark Act of February 20, 1905 (15 USCA § 85), and in effect would amend said act by striking out of said section the word "class," and the phrase "same descriptive properties" where it occurs the second time in the first proviso of said section.

Clearly, if confusion or mistake is to be determinative of "class" and "same descriptive properties," then these words have no meaning or effect whatever, used as above indicated in said section.

I agree with the majority that the words "same class" and the phrase "same descriptive properties," as used in said section, are synonymous in their meaning, and for the sake of brevity shall use the words "same class" in lieu of the phrase "same descriptive properties."

Under the language first above quoted, as I construe it, the portions of section 5 (15 USCA § 85) here under consideration would, in effect, read as follows:

"That no mark by which the goods of the owner of the mark may be distinguished from other goods * * * shall be refused registration as a trade-mark on account of the nature of such mark unless such mark— * * *

"*Provided*, That trade-marks which are identical with a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties, or which so nearly resemble a registered or known trade-mark owned and in use by another * * * as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers shall not be registered."

In other words, under the interpretation given the section in the majority opinion, the words "class" in the first part of the section and "same descriptive properties" where they occur the second time in the proviso, are mere surplusage.

The rule is so familiar that it requires no citation of authorities in support of it, that effect must be given to every part of a statute.

In the case of American Steel Foundries v. Robertson, 269 U. S. 372, 46 S. Ct. 160, 162, 70 L. Ed. 317, the court declared that "to the extent *the contrary does not appear from the statute*, the intention was to allow the registration of such marks as that law" (substantive law of trade-marks), "and the general law of unfair competition of which it is a part, recognized as legitimate." (Italics mine.)

I submit that there is nothing in this language that supports the elimination of the words here being considered from section 5. On the contrary, it clearly implies that effect must be given to every part of the section.

It seems to me that the statute, both in express language and intent, is clear, that in a trade-mark proceeding it is the duty of the Patent Office first to ascertain whether the mark proposed to be registered distinguishes the goods to which it is applied from other goods of the same class. In order to determine this, its first inquiry must be as to class. The word "class" has a common meaning and has been defined by lexicographers as follows:

The Century Dictionary defines "class" as: "4. A number of objects distinguished by common characters from all others, and regarded as a collective unit or group; a collection capable of a general definition; a kind."

Funk & Wagnalls New Standard Dictionary defines it thus: "3. A number of objects, facts, or events having common accidental or essential properties; a set; kind; variety; as, a *class* of propositions, of energies, of duties."

If the Patent Office finds that the goods are not of the same class, it should inquire no further with a view to possible adverse action upon the application, so far as that part of the section here under consideration is concerned. If, however, it finds that they are of the same class, and the marks are not identical, then and not until then is it authorized to consider the matter of confusion. Under the rule laid down in the majority opinion, it must first determine whether confusion exists in order to determine class. But why determine class at all under this rule? If confusion results by the use of two marks, that is the end of it; they are then of the same class; so says, in effect, the majority opinion, as I understand it. If the term "class" is to have a limited or extended meaning and application, according to whether confusion is likely to be caused by the use of the marks, then the word "class" means nothing in the section, for it has no application. According to this theory, two articles may clearly belong to the same class, according to the ordinary meaning of the word, but they are not of the same class if confusion is not likely to be caused by the use of similar trade-marks upon them. As I construe the statute, it plainly states that confusion shall be the test of rejection of an application for registration only if the goods to which marks, not identical, are applied, are in the same class, but by the majority opinion, the consideration of confusion is always necessary in order to determine class.

I appreciate that the language in the opinion which I have been discussing is followed by the statement: "And, of course, in this connection, the use, appearance, and

structure of the articles, the similarity—or the lack of similarity of the packages or containers in which, the place or places where, and the people to whom, they were sold should be considered."

I do not, however, understand that this language is intended to modify in any way the statement preceding it, that "the words 'same class' and 'same descriptive properties' were intended to be given a limited or an extended meaning and application, according to whether or not the use of identical or similar trade-marks would be likely to cause confusion or mistake in the mind of the public or to deceive purchasers."

If the language following is intended to modify the foregoing, it seems to me that it should so state. If so intended, does the majority mean that confusion shall not always be the test of whether the goods are in the same class or not, but only in certain cases? If so, to what cases will the test of confusion be applied, and in what cases will class be determined from the ordinary meaning of the word?

However, as I understand the opinion, the fair construction of the language is that the test of confusion shall always be applied in determining whether goods are of the "same class" or possess the same "descriptive properties," and the language referring to use, appearance, structure of the articles, etc., is intended to aid in determining whether confusion is likely to be caused, and has no bearing or application otherwise.

The statute we are construing is, it seems to me, clear and unambiguous, at least when it is held that the word "class" and the phrase "same descriptive properties" are synonymous in their meaning, and, that being the case, I cannot concur in a construction which in my opinion eliminates therefrom a material element designed to govern proceedings in the Patent Office.

GARRETT, Associate Judge, concurs in the specially concurring opinion.