## HEGER PRODUCTS CO. v. POLK MILLER PRODUCTS CORPORATION.

### Patent Appeal No. 2655.

Court of Customs and Patent Appeals.

March 31, 1931.

Howard L. Fischer, of St. Paul, Minn. (Thos. L. Mead, Jr., and James H. Littlehales, both of Washington, D. C., of counsel), for appellant.

Mason, Fenwick & Lawrence, of Washington, D. C. (Edward G. Fenwick, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

On May 16, 1925, the appellant filed its application, serial No. 214,416, for the registration of a trade-mark to be used in connection with the sale of parrot, dog, bird, and cat medicines. The trade-mark consists of a yellow label with two annular red bands, one on the upper and one on the lower portion of the label. In its application the appellant stated "the trade mark has been continuously used and applied to said goods in applicant's business since on or about January 10th, 1921." Opposition was filed thereto by the appellee. Both parties took testimony. The Acting Examiner of Interferences sustained the opposition and refused registration, and, on appeal to the Commissioner, this decision was affirmed on August 1, 1929.

The appellee opposed the registration sought, on the ground that the same would cause confusion with the mark used by the opposer, which was the same mark as that used by the appellant, and which the opposer stated had been used by it upon animal medicines, since "long prior to the year January 10, 1921." The opposer contended that its goods were of the same descriptive properties as those of the appellant, and that to grant the application in question would cause it damage.

The Commissioner gave, as reasons for his holding, that medicines for animals are not of

the same descriptive properties as foods and ingredients of foods, and that the appellant, having used the mark in question only on products consisting of aquarium cement, foods for birds, gravel and cuttle bone, and medicated seed cake, which he held to be a food, could not expand this mark to include animal medicines.

The Commissioner further found that the appellee had been using its mark, the label in question, on dog medicines since June, 1919, at which time it adopted the same as its trade-mark. He also found that this date was prior to any date of use by appellant, shown by the record, and held that the evidence of appellant as to earlier use than this was insufficient and unsatisfactory. The appellant, on August 21, 1929, filed a petition to remand to the Examiner to take further testimony on the question raised by the Commissioner in his decision, wherein he had held that the medicated seed cake made by appellant was not of the same descriptive properties as the goods manufactured by appellee. This motion was denied by the Commissioner on September 5, 1929.

In the written decision filed at that time, the Commissioner called attention to the statement of appellant, in its application for registration, that it had used this mark on its goods since on or about January 10, 1921, and held that the appellant could not be entitled to an earlier date, in the absence of correct and convincing evidence showing error in his said statement, and which clear and convincing evidence the Commissioner held did not exist. The Commissioner also held that the appellant was estopped by the acts of its officers, the Heger brothers, from claiming the right of registration by virtue of the fact that they had, in their business up until the year 1924, known of the use, by appellee, of the mark in question; had continuously bought goods from the appellee bearing such marks, and had sold the same in their place of business continuously, and sometimes representing to customers that the goods were the product of the appellant.

On September 14, 1929, the appellant filed his notice of appeal to this court in the Patent Office, setting forth nine assignments of error; thereafter, on October 1, 1929, appellant again filed in the Patent Office a motion to remand and reopen the case, alleging the discovery of claimed new and important testimony, namely, certain check stubs made in the business of Edward S. Schmid, and which, it was said, substantiated the claims of appellant to an earlier use than that set out

in his application for registration. On October 9, 1929, the Commissioner denied this motion on the grounds that the case was decided on the theory that medicated seed cake for animal and bird foods were of different descriptive properties, and that the alleged newly discovered evidence would not affect that decision. He also held that the appellant was estopped by the facts appearing of record, that, therefore, the alleged new evidence would not be beneficial to him, and that notice of appeal had been filed, and "it is at least doubtful whether this Office has authority to entertain a motion to reopen after notice of appeal to the Court."

The matter now comes to this court on this record. No error is assigned by appellant upon the failure of the Commissioner to grant his motion for a remand of the cause, made October 1, 1929, as this motion was made after the notice of appeal containing the assignments of error had been filed. It is apparent that this action of the Commissioner is not now before this court for consideration. In re Schneider, 39 F.(2d) 278, 17 C. C. P. A. 952; In re Smith, 36 F.(2d) 522, 17 C. C. P. A. 752; Nolop v. Smith, 36 F.(2d) 838, 17 C. C. P. A. 768.

The question of the jurisdiction of the Patent Office to take further steps in proceedings of this nature after notice of appeal to this court has been filed is therefore not now before us, and that question is reserved for the future consideration of the court.

We shall first examine the question of estoppel raised on this record, for it is quite evident that, if the appellant, by its affirmative acts, has lulled the appellee into security, and has induced it to believe that the use of its mark was unobjected and consented to, then it would seem to follow that the appellant should be precluded from claiming the exclusive right to the use of said mark.

The evidence on behalf of the appellant shows that in 1892 one Herman H. Heger conducted a business known as H. H. Heger's Retail Store, and dealt in birds, pets, and sundries. Mr. Heger died in 1909, at which time his business was known as the Heger Bird Store. Thereafter, his sons, William F. Heger and Robert R. Heger, took charge of the business and conducted it as a copartnership, using the name of Heger Bird Food Company until about 1918 or 1919, at which time the name was changed to the Heger Products Company. Thereafter the firm was incorporated as Heger Products Corporation. During these years, and up to the time of hearing herein, these parties have conducted

a retail store, where bird, fish, and animal foods and medicines are sold, in St. Paul, Minn.

The appellee is a corporation which was first known as the Polk Miller Drug Company, and is, at this time, known as the Polk Miller Products Corporation. The appellee and its predecessor has been engaged, since February 1, 1919, in the manufacture of a general line of dog medicines.

In May or June, 1919, the Polk Miller Drug Company adopted, as its trade-mark, a carton with a yellow background and with parallel red bands at the top and bottom of the carton. The evidence in the record shows, satisfactorily, that this particular kind of carton was used by the appellee and its predecessor as a trade-mark continuously since that time up to the time of hearing. There was a slight variation in the color scheme in this respect, that in cartons containing packages of sufficient size, the red bands entirely surrounded the carton, while in small flat packages, such as is shown by Appellant's Exhibit 1, namely, arsenic and iron pills, the red bands were simply superimposed across, or approximately across, the upper and lower portions of the front sides of the carton. No doubt exists from the record that this mark was used continuously by the appellee and its predecessor, as above stated.

The appellant and its predecessor, as has been said, were engaged in conducting a general retail store, in the conduct of which the Heger brothers personally took part. They ordered goods, as needed in the store, and sold the same over the counters to customers, doing a rather extensive business in the general line of bird, fish, and animal foods and medicines.

On September 8, 1920, the Polk Miller Drug Company sold to the appellant's predecessor certain of its goods, which were received by appellant's predecessor and sold by it to its customers. The evidence satisfactorily establishes that these goods were marked with appellee's trade-mark, which it had adopted and had been using; namely, a yellow carton with red annular stripes. From that time until the Heger brothers completed their own line of bird, fish, and animal remedies, some time during the year 1924, the Heger brothers purchased and used, in their business, large quantities of appellee's products, all of which were in containers bearing appellee's aforesaid trade-marks, and all of which were displayed upon appellant's shelves and sold by them to their customers.

During all of this time the appellant made no complaint, nor did either of the Heger brothers, about the use of this mark by the appellee, and at no time intimated or indicated to the appellee that it had any objection to the use of such mark. In fact, on many occasions, the goods of appellee were sold and represented to customers of appellant as the goods of the appellant, as was shown by the testimony of William F. Heger, appearing in the record.

The Heger brothers testify that, since their corporate business first began in 1919, they have used on certain of their products a similar mark; namely, a yellow carton with red stripes. They testify further that they were using this same mark when they were selling the goods of the appellee; that they carried these goods on their shelves side by side. They explained their failure to object to the use of this mark by the appellee on the general grounds that they did not know this was necessary. They are, however, men of apparent intelligence and education, and accustomed to the ways of business. They admit that they purchased goods as stated by the appellee, except that they gave the approximate date of commencement at 1921, and admit that they noticed the color of the labels used by the appellee at various times while the goods were being sold by them. The purport of their testimony is, however, that there is some confusion in their minds as to whether the red bands were annular or only extended a part of the way around the packages. However, they both concede and testify that they knew the distinctive mark of a yellow label with red bands.

The goods which the appellee sold comprised a number of medicines for animals, such as are usually sold in a store which caters to the bird, animal, and pet fish trade. These were such as distemper medicine, mange medicine, carbolic tar soap, etc. Appellant first manufactured aquarium cement, mixed bird seed, medicated seed cake, and some other similar products, and later added cat, dog, and fish medicines and foods.

Some contention has been made, in this case, that the goods of the appellant and appellee are not goods of the same descriptive properties. We are of opinion that this contention is not well taken. Under the recent decisions of this court, the goods of appellant and appellee, being goods which are used for the same general purpose, namely, the care of pet animals, fish, and birds, and being sold from the same places of business, are goods

of the same descriptive properties. Palmer Co. v. Nashua Mfg. Co., 34 F.(2d) 1002, 17 C. C. P. A. 583; Cheek-Neal Coffee Co. v. Hal Dick Mfg. Co., 40 F.(2d) 106, 17 C. C. P. A. 1103; B. F. Goodrich Co. v. Hockmeyer, 40 F.(2d) 99, 17 C. C. P. A. 1068; Sun-Maid Raisin Growers v. American Grocer Co., 40 F.(2d) 116, 17 C. C. P. A. 1034; Kotex Co. v. McArthur, 45 F.(2d) 256, 18 C. C. P. A. ——; National Biscuit Co. v. Sheridan, 44 F.(2d) 987, 18 C. C. P. A. ——; Skookum Packer's Ass'n v. Pacific, etc., Co., 45 F.(2d) 912, 18 C. C. P. A. ——.

On the question of estoppel, we are unable to concur with the Commissioner. Mere acquiescence in the use of one's trade-mark by another, even though it may be for an extended period, will not, in itself, bar the person from asserting the right to such trade-mark at any time. There must be something more than mere acquiescence and delay in enforcing such rights. The right to claim the exclusive use of such trade-mark is a continuing right in the owner. This has been well settled by the authorities. McLean v. Fleming, 96 U. S. 245, 257, 24 L. Ed. 828; Menendez v. Holt, 128 U. S. 514, 524, 9 S. Ct. 143, 32 L. Ed. 526; Michigan Condensed Milk Co. v. Kenneweg Co., 30 App. D. C. 491; Carroll & Son Co. v. McIlvaine et al. (C. C.) 171 F. 125. This rule has long been the rule in equity cases, and has been announced in Michigan Condensed Milk Co. v. Kenneweg Co., supra, to be equally applicable in matters of registration in the Patent Office.

We should not be understood as here holding that estoppel may not arise by the acts of the parties which would prevent registration. All we desire to hold is that the facts presented in this case constituting acquiescence, merely, do not raise such an estoppel. The fact that the agents of the appellant sold the goods of appellee as their own to customers constituted a fraud and one which could have been restrained in equity by the appellee, but it was not such a circumstance as to create an estoppel against the appellant in this proceeding, which might be asserted by the appellee.

The question then arises as to the priority of use by the respective parties. The appellant represented in its original application for patent that it had used the mark in question continuously since on or about January 10, 1921. This application was sworn to by Robert H. Heger, one of the Heger brothers. No attempt, at any time, was made to amend this application in this respect. On the hearing, the Hegers attempted to prove that the mark in question had been used by them and their father on or before the year 1909, and continuously since that time, on various products, including aquarium cement and various kinds of medicated seed cake and other bird, animal, and fish preparations.

The testimony of the Heger brothers is, to a considerable extent, unsatisfactory, and lacks those corroborating circumstances which should be present if the appellant is to sustain the burden placed upon it to overcome the concurring decisions of the Patent Office tribunals. The fact that during many years of their business they were selling the appellee's goods bearing the mark which they now claim the exclusive right to use, and that during the whole of that period no protest was made against the use of the same, added to the further fact that Robert R. Heger, one of the brothers, testified that as early as February 1, 1921, his firm had no trade-marks, are all circumstances which induce a belief in the reasonable mind that, at the time the appellee began to use the trade-mark in issue here on its goods, the appellant and its officers had not adopted the same as its trade-mark. It is true that the Heger brothers, and possibly their father, may have used a color combination of yellow and red in making cartons for the particular products they handled, but it is equally true, in our opinion, that the idea of appropriating the same to their exclusive use as a trade-mark was not in their minds at the time the appellee began to use the same as its trade-mark, and that this idea was a thought conceived by the Heger brothers at the time they formed their present company, the Heger Products Corporation, on January 10, 1921.

This being our conclusion, it follows that the Commissioner committed no error in finding that appellee was the prior user and owner of the mark in question, and that the appellant was not and is not entitled to the registration of the same, and that the opposition should be sustained.

The decision of the Commissioner sustaining the opposition is affirmed, and costs occasioned by the supplemental record are taxed against the appellant.

Affirmed.