In re SCHNEIDER.

Patent Appeal No. 2266.

Court of Customs and Patent Appeals.

April 10, 1930.

Eugene C. Taylor, of Washington, D. C. (Robert S. Allyn, of New York City, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C., for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Appellant's claimed invention is for improvement in hose supporters for use by women. The application was rejected by the Examiner in the Patent Office, and by the Board of Appeals.

Claim 1 may be taken as illustrative.

"1. A hose supporter comprising a non-slipping back pad, elastic hip bands connected thereto and adapted to be supported around the hips below the waist and terminating in adjustable gripping members adapted to be secured to the upper inner edges of stockings, outside stocking straps secured to said hip bands at points in front of the hips, a cross-tie connecting said hip bands below the abdomen and adjustable at one end, and means located just above the point of connection of one side strap for adjusting the length of a hip band above the cross-tie."

Four patents were cited as references: Eisman, 847,747, March 19, 1907. Van Heusen, 1,357,929, Nov. 2, 1920. Hynds, 1,361,-865, Dec. 14, 1920. Schneider, 1,525,957, Feb. 10, 1925.

It will be noted that one of these references is a patent to applicant herself. The brief in the instant case says of her device at issue that "it comprises features for making an open front type supporter better adapted to stay in place and more salable than any previous open front type supporter."

Appellant claims inventive improvement in the device at issue over her former patent, and over the prior art generally, in presenting "the roughened or non-slipping back which is novel in the open front type hose supporter," and "features of novelty" comprised in "the ideal location of the adjusting means for the main band close to the cross-tie adjustment and above or back of the connection of the cross-tie and side straps of the main band."

It seems to us that while there may be novelty in these features, as claimed, they do not constitute invention.

Van Heusen shows a roughened surface to prevent slipping applied to the supporter encircling the leg. Transferring this to the back of the band which encircles the waist or hips appears to be obvious. In Eisman, there is a buckle adjustment in a hip-encircling supporter which has the same relative position as that stated in applicant's claims. Figure 4 of the Hynds' drawings discloses a device practically similar in contour and structure to the device shown by Figure 1 of the drawings of applicant, except that the

Hynds' patent has additional harness extending upward from the waist encircling belt, so as to fit over the shoulders, thus having the support, at least in part, from the shoulders instead of entirely from the hips, as proposed by appellant's claims, and with the further exception that Hynds does not show the roughened sector on the inner side of the back of the waistband. We do not think it inventive merely to omit this upper harness, nor would it seem to be inventive to substitute elastic for nonelastic material in the structure of the band, particularly in view of the fact that the use of elastic material is old in the art of hose-supporters, the field in which this claimed invention lies.

The first decision of the Examiner was rendered in this case April 21, 1925. Thereafter, a certain amendment to the claims was proposed and incorporated, and on June 29, 1926, the claims, as amended, were again rejected, the rejection being made final so far as the Examiner was concerned. The appeal to the Board was taken on June 24, 1927, and applicant on that date sought to make further amendments and to add a new claim to be "entered for consideration on appeal." The Examiner refused entry "for the reason that such proposed amendment would alter the scope of the appealed claims," but in his statement for use by the Board said:

"It may be added that the claims, if so amended, as well as the proposed new claim, would appear to be answered in the art of record."

The Board, in passing upon this feature, said:

"We must decline to consider appellant's proposed amendments and additional claim presented with the notice of appeal, for reasons set forth in Ex parte Moore, 1923 C. D. 13."

The Moore Case seems to have followed Ex parte Sears, 148 O. G. 279; 1909 C. D. 198.

In the reasons for appeal to this court, there is no specific assignment of error as to the action of the Board, and we should feel ourselves justified, for this reason, in declining to give it consideration. Those appealing to this court should give to the court, by specific assignments, and with particularity, all grounds of alleged error upon which they rely.

However, since no question is raised by the brief of the Commissioner upon this failure, the court will take occasion briefly to refer to it.

The brief of appellant insists that we should now consider the proposed claim because the Examiner's *statement* by saying "It may be added that the claims if so amended, as well as the proposed new claim, would appear to be answered in the art of record," indicates that he did in fact consider it.

Application of Eiermann, 53 App. D. C. 39, 287 F. 1016, is cited as authority. We do not think it applicable. In the Eiermann Case, which arose prior to the present statute relating to appeals, a claim which had not been presented to the Examiner was offered before the Examiners-in-Chief and refused consideration, but upon appeal to the Commissioner he did consider it and the Court of Appeals of the District of Columbia held that, inasmuch as the appeal to it was from the Commissioner, the matter was a part of the record proper for the court to consider.

In the instant case, the Board of Appeals, which is now the tribunal of final resort in the Patent Office, did not consider it, and it did not become a part of the considered record in the case as appealed to us.

The Examiner in the Patent Office is the expert of the office, and surely all claims should be submitted to him for consideration. The proposed new claim of appellant was not submitted until long after the Examiner's final rejection and the passing of the matter from his jurisdiction, unless some course evidently not taken in this case had been pursued. We think he properly refused it official entry and the expression of opinion in his statement—not in any decision—that even if admitted it "would appear to be answered in the art of record," was nothing more than obiter dictum. The Board very properly declined to admit it and, not being before the Board, it is not before us.

Another development of this case was that, during the oral argument before us, counsel for appellant stated that it had been only recently discovered that a patent to another party had been granted upon an application filed in the Patent Office while appellant's present application was there pending, which patent covered claims that are covered, at least, in part, by claims of appellant. It is alleged that, if patentable, an interference should have been declared between appellant and the said other party, and the issue of priority determined. The matter was thus brought to our attention with a view of having us determine whether under that state of facts this court could grant any relief.

The Solicitor for the Patent Office does not concede the claims to be similar, and in the hearing before us expressed no opinion on that point.

■ It seems manifest that we are without authority or power to deal with this question in this proceeding. While we assume that we are charged with knowledge of the issuance of patents by the Patent Office, that is not judicial knowledge in the sense that the letters patent can be brought into a case such as this one for the purpose of obtaining any action or judgment relating to the letters, or for affecting the decision upon the issues actually before us on appeal.

The decision of the Board is affirmed.

Affirmed.