## SOUTHGATE v. GREENE.
### Patent Appeal No. 2942.

Court of Customs and Patent Appeals.
April 11, 1932.

Charles H. Potter and James F. Pierce, both of Washington, D. C., for appellant.

Pennie, Davis, Marvin & Edmonds, of New York City (Merton W. Sage and Clarence M. Fisher, both of New York City, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

A patent was issued to George T. Southgate, the appellant, by the United States Patent Office on June 1, 1926, No. 1,587,197, on an application filed May 7, 1924. After the issuance of the Southgate patent, the appellee, Albert E. Greene, filed his divisional application for a patent, serial No. 121,137, on July 8, 1926, and copied fifteen claims of the Southgate patent.

An interference was declared by the Patent Office between said application and said patent on two counts. The said application, serial No. 121,137, was claimed to be a divi-sion of Greene's former application, serial No. 254,224, filed September 16, 1918.

It is contended by Greene that said application, serial No. 121,137, contained another invention than the one which is the subject-matter of the interference, and thereafter, on January 7, 1927, Greene filed another divisional application, serial No. 159,723, which was substituted in the interference. In this application were included the two claims which were originally in interference, and twelve others. The declaration was redeclared by the Examiner on December 1, 1928, on fourteen counts, as represented by said fourteen claims of the said application of Greene, serial No. 159,723, and all of which came from the Southgate patent.

Neither party took testimony in the interference. The party Greene relied upon his application of September 16, 1918, as a complete disclosure of the subject-matter of all of the counts of the interference, and placed no reliance upon his said application of July 8, 1926. As the Greene application of September 16, 1918, antedated the earliest date alleged by the appellant, Southgate, it is apparent that Greene is entitled to priority, if the disclosure of his said application supports the counts of the interference.

It is unnecessary for the purposes of this decision to recite the various interlocutory motions and orders which were entered in this case in the patent office. It is sufficient to say that the right of Greene to make the counts of the interference has been challenged in the various tribunals of the Patent Office, but that the interference was permitted to proceed upon all counts.

The Examiner of Interferences, in an exhaustive consideration of the matter, awarded priority to Greene, although, in so doing, he expressed doubt as to some of the counts of the interference reading upon Greene's earlier disclosure. He felt, however, constrained to hold that they did so read because of the holdings of the Board of Appeals upon motions theretofore made to dissolve the interference.

Upon appeal, the board held that the Greene disclosure of September 16, 1918, was sufficient upon which to base all of the counts of interference, except counts 11, 12, and 13. These the Board held did not read upon said disclosure; therefore the Board awarded priority to Greene on all the counts except said counts 11, 12, and 13, and priority upon these was awarded to Southgate.

The following questions are raised by the appellant in his appeal to this court: First, that the counts of the interference, 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, and 14 do not read upon the Greene disclosure of 1918. Second, Southgate claims Greene is estopped from making the counts of the interference because he failed to present claims to the subject-matter thereof, before or within two years after the publication of an article by Southgate in Chemical and Metallurgical Engineering, which article was published on July 7, 1924, and is said to be a disclosure of the subject-matter in issue here. Third, that Greene's refusal to permit access to the entire contents of his application of July 8, 1926, rendered the proffered application of September 16, 1918, inadmissible under the best evidence rule.

It is thought that counts 1, 2, 3, and 5 are fairly illustrative, which counts are as follows:

"1. In heating by a combustion flame and an electric arc superposed on and extending longitudinally of the flame, the process which consists in establishing the stream of the flame and the arc from independent sources, and in directing the arc to and along the flame stream by a gaseous blast which is passed over the arcing portion of the electrode.

"2. In apparatus for combined combustive and electric heating, a nozzle electrode comprising a nozzle having a bore therethrough for projecting fuel and oxidizing matter into a stream of flame, and an electrode coaxial with said bore and having an arcing portion projecting beyond said nozzle.

"3. In the process of heating by a combustion flame and a superposed arc originating at a source spaced from the source of a stream of flame, the step which comprises directing the arc to and along the flame stream by a blast passing over the arc source at such velocity that the arc cannot strike back to the blast-producing nozzle."

"5. The process of heating mobile substances at high temperatures which comprises establishing a stream of flame and an arc from independent sources, directing said arc upon and along said stream of flame by a gaseous blast, and blowing into said flame stream the mobile substances to be heated.

While the question is not entirely free from doubt as to some of the counts in issue, we are of the opinion that no reversible error can be found in the action of the Board of Appeals in finding that the counts of the interference read upon the disclosure of Greene's 1918 patent. The Greene device is shown and described in several different forms. As illustrated by Figure 1 of his drawing, his device consists of an electric arc furnace in which air and combustible material, or combustible material alone, is forced into the furnace where the metal is melted, in connection with an electric arc; the combined heat of the arc and burning material furnishing the necessary heat for the melting of the metal in the furnace.

In the specification, as well as in the drawings, notably in Figure 1 of the latter, a tuyere is shown in the lower part of the shaft of the furnace through which, as is stated repeatedly in the specification, "a blast of air is forced," and, again, "powdered coal or other carbonaceous material is blown in with the air making a combustion flame which enters the shaft around the arc." Repeatedly Greene alludes in his specification to "a blast" entering the furnace around the electrode. From the end of this electrode or electrodes, as the case may be, the arc or arcs passes or pass to other electrodes in the bottom of the furnace, and with and along the stream of entering combustible material.

It is impossible to read Greene's 1918 application without coming to the conclusion that he had in mind and described exactly the same operation and process which is described by Southgate, and is included in the various counts of the interference.

It is contended by the appellant that Greene did not contemplate and did not describe the subject-matter of counts 3, 4, 7, and 8, wherein the counts recite that the stream of combustible material was driven into the furnace around the electrode at velocity "such that the arc cannot strike back to the nozzle." The Board of Appeals called attention, properly, we think, to the fact that a high velocity of the entering gases around the electrode would not be necessary, and that a "blast" sufficient to carry pulverized coal or other combustible material would inherently have the effect of carrying the arc forward with the stream. This is not seriously controverted by the appellant. In fact, in his article in the Chemical and Metallurgical Journal of July 7, 1924, Southgate alludes to the velocity of gases necessary in such cases as a "mild blast action." We are not disposed to differ with the Board of Appeals in its conclusion in that respect; there being nothing apparent from the record to indicate that its conclusion was erroneous. The

Examiner of Interferences called attention to the fact that, because of the construction of Greene's furnace, the walls of the tuyere being nonconducting, the arc would not strike back in any event. This fact is a further inducement toward the correctness of the conclusion of the Board of Appeals.

It is argued by appellant that many of the counts call for a nozzle surrounding an electrode, and that Greene's device is nothing more than a hole in the side of a furnace, through which an electrode is inserted. In support of this he cites Speed v. Kirby, 50 App. D. C. 263, 270 F. 699. The case cited is hardly authority here, inasmuch as the matters then being considered by the Court of Appeals consisted of two ports, which were simply holes in the side of a carburetor, through which the fluid ran by gravity. In this case Greene described the element through which his gases entered as a tuyere, which is described by Webster's New International Dictionary, 1932, as "A nozzle through which the air blast is delivered to a forge, blast furnace, etc."

Another contention is made by Southgate that claims 9 and 10 introduce an element which is not found in Greene, namely, a plurality of electrodes with the arcing portions thereof spaced from said nozzle and at different distances therefrom. The Board of Appeals was of opinion that the Southgate patent failed to show any such construction. On examination of the drawings accompanying the Southgate patent, we are unable to discern where any such construction is shown. In Figure 4 and in Figure 5 more than one nozzle is shown. However, whenever a multiplicity of nozzles and electrodes are shown, these are shown to converge to one point and into a common stream of flame. However, conceding that Southgate does disclose in his specification the subject-matter of these counts, we are of opinion they are equally well shown by Greene in his application, both in the specification and drawings.

To sum up, our conclusion is that no error was committed in finding that the counts of the interference now in the case read upon the Greene disclosure of 1918.

We also find no error in the decision of the Board of Appeals that no estoppel of Greene exists because of the publication of the article by Southgate in the Chemical and Metallurgical Journal of July 7, 1924. The Board of Appeals correctly calls attention to the fact that counts 5 and 6 contain the element of introducing or blowing into the stream of gas the mobile substances to be heated, and that a disclosure of this process is not disclosed in the aforesaid printed article.

Southgate's patent was issued June 1, 1926. Greene's first divisional application was filed July 8, 1926, and his second, upon which he entirely relies herein, on January 7, 1927. These were both within two years from the date of issuance of Southgate's patent. No intervening public use or sale of Southgate's device is shown by the record. Conceding that Southgate disclosed the subject-matter of all the counts except said counts 5 and 6 in said publication, does that fact bar Greene's divisional applications as to the counts, the subject-matter of which was so disclosed?

Appellee relies upon two authorities: Westinghouse Elec. & Mfg. Co. v. Jeffrey-DeWitt Insulator Co. (C. C. A.) 22 F.(2d) 277, and Dwight & Lloyd Sin. Co. v. Greenawalt (C. C. A.) 27 F.(2d) 823, 831.

In the case first cited, the Circuit Court of Appeals of the Second Circuit called attention to the fact that the Supreme Court, in Chapman v. Wintroath, 252 U. S. 126, 40 S. Ct. 234, 64 L. Ed. 491, had seemingly modified the rule previously obtaining about divisional applications having the full benefit of the filing date of the parent application, by applying any intervening statutory bar to such divisional applications. No question of prior publication was involved in the Westinghouse Case, but the matter was decided upon proof of actual sale and public use more than two years prior to the date of the divisional application.

In the second case cited, which arose in the same circuit, the bar of public sale and use was interposed. The court, citing authorities in support thereof, said among other things: "It is now settled law, in spite of any doubts that may have been cast upon it by certain observations in Chapman v. Wintroath, 252 U. S. 126, 40 S. Ct. 234, 64 L. Ed. 491, that a divisional application is no more than an amendment in the parent application, at least unless 'new matter' be introduced in the specification, which, whatever latitude it gives, was not the case here."

Prior to the decision in Chapman v. Wintroath, supra, it was the rule of the Patent Office and the trend of judicial construction to give to the divisional applicant the benefit of his original filing date, without the application of intervening statutory bars, in so far, at least, as no new matter was disclosed in the divisional application. After that de-

cision, however, the courts and the Patent Office endeavored to conform to what they considered to be the effect of that pronouncement by the Supreme Court, as is evidenced by the two cases above cited by appellee.

The Board of Appeals, in the case at bar, said, in part: " * * * In our opinion, it would be an extension of the doctrine of Wintroath v. Chapman beyond anything yet sanctioned by the courts to apply it to the case of a mere printed publication."

In this respect, the Board followed its rule formerly announced in Lee and Hogan v. Vreeland, C. D. 1923, p. 94.

In Webster Elec. Co. v. Splitdorf Elec. Co., 264 U. S. 463, 44 S. Ct. 342, 344, 68 L. Ed. 792, the Supreme Court took the case on certiorari, for the express purpose of disposing of a claimed judicial misconstruction of the decision in Chapman v. Wintroath, supra, by the Circuit Court of Appeals of the Seventh Circuit in the same case, Splitdorf Elec. Co. v. Webster Elec. Co., 283 F. 83, and by the District Court of the Northern District of New York, in American Laundry M. Co. v. Prosperity Co., 294 F. 144.

The Supreme Court, in the case cited, called attention to the fact that Chapman v. Wintroath should not be so narrowly construed as to arbitrarily fix the period during which a divisional application might be filed at two years from the date of issuance of an interfering patent. In the course of the opinion by Mr. Justice Sutherland, the following statement is made, which may safely be taken as our guide here: "If this were all, it might justify the conclusion that a hard and fast time limit of two years is to be applied in every case of a divisional application. But a reading of the entire opinion demonstrates that this conclusion is erroneous. The court proceeds to say that divisional applications are not to be dealt with in a hostile spirit, but are to be 'favored to the extent that, where an invention clearly disclosed in an application * * ' is not claimed therein, but is subsequently claimed in another application, the original will be deemed a constructive reduction of the invention to practice and the later one will be given the filing date of the earlier, with all of its priority of right.' Reference is made to Wollensak v. Reiher [115 U. S. 96, 5 S. Ct. 1137, 29 L. Ed. 350], supra, and other reissue cases, which, as we have seen, adopt the two-year time limit by analogy to the law of public use before application for patent, and, while it is not said in terms, the plain import of the citation of and reliance upon these cases is that the effect of the two years' delay, as recognized in those cases, may be overcome where it 'is accounted for and excused by special circumstances which show it to have been not unreasonable,' and, properly understood, there is nothing in the opinion to the contrary."

If we are to apply this rule to printed publications which might otherwise amount to a statutory bar, we are nevertheless convinced from this record that there are special circumstances appearing from this record which make the application of the rule here not only unnecessary, but inequitable. Greene fully discloses the subject-matter of these counts in his application of September 16, 1918. He was continuously insisting upon claims to the invention, as evidenced by his amendments to his claims on November 24, 1919, and on January 13, 1921. As the result of a requirement for division on March 18, 1925, he filed his 1926 application, in which he again disclosed and claimed his invention. Through all the years since his 1918 application, his claims have been continuous, and he has been active in their pursuit. We are not disposed to hold, under such circumstances, that the publication of Southgate's magazine article should cut off all his rights in the prosecution of his present application.

Finally, appellant insists that he had a right to inspect the whole of Greene's 1926 application. If this were a matter in which we might take jurisdiction, as to which we express no opinion, it would not be possible for us to do so, as appellant has assigned no error in that respect in his reasons for appeal.

Finding no error, the decision of the Board of Appeals is affirmed.

*Affirmed.*