64 F.2d 780 (1933)
In re WAGENHORST.
Patent Appeal No. 3059.
Court of Customs and Patent Appeals.
April 24, 1933.
Church & Church, of Washington, D. C. (Melville Church and Clarence B. Des Jardins, both of Washington, D. C., of counsel), for appellant.
T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.
Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.
GRAHAM, Presiding Judge.
The appellant filed his application in the United States Patent Office on April 2, 1927, for a patent on improvements in automobile wheels. This application was stated to be a division of appellant's pending application, serial No. 41,835, filed July 6, 1925. Appellant claims the latter date as his effective filing date as regards this divisional application.
In the letter of the Examiner of May 23, 1928, Putnam, No. 1,612,050, of December 28, 1926, was cited as a reference. Thereafter appellant filed an affidavit under rule 75 of the Patent Office, which affidavit was intended to eliminate further reference to Putnam by that office. Attached to this affidavit were a number of sketches, bearing date from February 14, 1924, to February 29, 1924, and which it is said in the affidavit were delivered by appellant to his attorney and to a draftsman for the preparation of an application, serial No. 726,529, which eventuated in a patent duly issued to appellant on May 10, 1927, No. 1,628,626. This application was filed July 17, 1924.
Also attached to the affidavit were two drawings, named, respectively, Exhibit 4 and Exhibit 5, and as to which the affidavit states the following: "* * * That on July 16, 1924, he made sketches fully disclosing the invention set forth in said divisional application, Serial No. 180,479, and disclosed and explained said sketches on that date to C. B. Des Jardins, of the firm of Church and Church, his attorneys in that case, and that photostat copies of said sketches are attached hereto, marked Exhibit 4 and Exhibit 5; that he does not know and does not believe *781 that the invention has been in public use or on sale in this country or patented or described in a printed publication in this or any foreign country for more than two years prior to the date of filing of his said application, Serial No. 41,835, of which the present application is a division, and that he has never abandoned the invention."
The said drawings each bear date of July 16, 1924.
The subject-matter of appellant's present application consists of a metal automobile wheel in which the brakedrum is utilized as a part of the body of the wheel; the demountable rim being detachably connected to such brakedrum by relatively short securing members or lugs, by means of bolts. The particular elements here involved lie in the rearward dishing of the central part of the brakedrum in order to strengthen said brakedrum against load strain, torque, etc., imposed upon it. There is also the further feature of a bolted connection between the spoke members and the brakedrum, in which the central portion of said spokes and the brakedrum are united in spaced relation to each other, so that the tension caused by such spaced relation will tend to prevent the nuts from becoming loosened upon said connecting bolts.
The rejected claims are as follows:
"1. A wheel comprising a brakedrum having the central portion of its side wall rearwardly dished, a tire-carrying rim, and means for detachably connecting said rim to said brakedrum, whereby load, sidethrust, and torque are transmitted through the drum."
"4. A wheel comprising a brakedrum having a cylindrical braking flange, a vertical portion extending inwardly from the front edge of said flange, and a central portion dished rearwardly from the inner edge of said vertical portion, a tire-carrying rim, a plurality of securing members rigidly connected to said rim, and means for detachably connecting the inner portions of said members to the vertical portion of the brakedrum."
"6. A wheel comprising a brakedrum, a tire-carrying rim, a plurality of sheet metal securing members rigidly connected to the rim and each having an inner portion seating on the periphery of the brakedrum, bolts carried by the drum and extending through the inner portions of the securing members, and nuts screwed on said bolts and clamping said inner portions against the drum.
"7. A wheel comprising a brakedrum, having a cylindrical braking flange, a vertical portion extending inwardly from the front edge of said flange, and a rearwardly dished central portion extending from the inner edge of said vertical portion, a tire-carrying rim, a plurality of sheet metal securing members rigidly connected to the rim and each having an inner portion seating on the periphery of the vertical portion of the brakedrum and engaging the rearwardly dished portion near its outer edge, bolts carried by the drum and extending through the inner portions of the securing members, and nuts screwed on said bolts and clamping said inner portions against the drum.
"8. A wheel comprising a brakedrum, a tire-carrying rim, a plurality of pressed metal securing members rigidly connected to the rim, the inner portion of each member engaging the brakedrum at radially spaced points and being spaced from the drum between such points, bolts extending through the drum and the inner portions of said members at the parts of the latter which are spaced from the drum, and nuts screwed on the bolts and engaging said securing members."
"10. A wheel comprising a brakedrum, a tire-carrying rim, a plurality of pressed metal securing members rigidly connected to the rim, the inner portion of each member engaging the brakedrum at radially spaced points and being spaced from the drum between such points, bolts extending through the drum and the inner portions of said members at the parts of the latter which are spaced from the drum, and nuts screwed on the bolts and having convex faces engaging concave recesses in said securing members."
The Examiner held that the affidavit was insufficient to meet the conditions of said rule 75, and that therefore the Putnam reference was still available. In coming to this conclusion, the Examiner called attention to the fact that the part of said affidavit which referred to certain sketches bearing date in February, 1924, was applicable only, by the terms of said affidavit, to the showings of the patent No. 1,628,626, of May 10, 1927, and that that portion of the affidavit referring to appellant's present application bore date as of July 16, 1924, a date approximately three months after Putnam's application was filed on April 7, 1924.
These circumstances, therefore, were taken by the Examiner as not a compliance with the provisions of said rule 75. The relevant portion of said rule 75 is as follows: "75. When an original or reissue application is rejected *782 on reference to an expired or unexpired domestic patent which substantially shows or describes but does not claim the rejected invention, or on reference to a foreign patent or to a printed publication, and the applicant shall make oath to facts showing a completion of the invention in this country before the filing of the application on which the domestic patent issued. * * *"
The Examiner thereupon rejected the claims in issue on certain references cited.
The Board of Appeals coincided with the Examiner as to his construction of said rule 75, and, after considering the matter upon the references cited, rejected all the claims here in issue, and from that decision appellant has appealed.
The following references were cited by the Board of Appeals in the following language:
"The references relied upon are:
"Putnam, (Reissue) 15,358, May 16, 1922.
"Klocke, 1,394,739, Oct. 25, 1921.
"Trepier, 1,405,358, Jan. 31, 1922.
"Siddeley, 1,439,269, Dec. 19, 1922.
"Forsyth, 1,470,222, Oct. 9, 1923.
"Reid, 1,471,356, Oct. 23, 1923.
"Putnam, 1,612,050, Dec. 28, 1926.
"Trout et al., 1,627,717, May 10, 1927.
"Wagenhorst, 1,628,626, May 10, 1927.
"Wagenhorst, 1,679,453, Aug. 7, 1928."
In our opinion, the tribunals of the Patent Office were correct in their conclusions that the affidavit of appellant was not sufficient to eliminate the reference Putnam. It is immaterial in this case whether appellant completed the invention embodied in his patent, No. 1,628,626, prior to Putnam's invention of the same, and this is as far as appellant's showing as to his proceedings in February, 1924, may be held to extend. Appellant must claim that the alleged invention disclosed in his present application has inventive features over his patent, otherwise he has nothing upon which a new patent may issue. If, therefore, it is claimed that the present application is for a new invention, he must show by his affidavit that this invention was completed before Putnam's filing date. As has been shown, his affidavit discloses a date three months subsequent thereto, and thus the affidavit avails him nothing, and does not bring him within rule 75. If it may be said that by his affidavit he has shown that he completed his invention on July 16, 1924, and as to this we express no opinion, this date is, as we have said, subsequent to the Putnam filing date.
The Putnam patent is therefore available as a reference, and may be used, so far as it is applicable herein.
The Examiner also rejected appellant's "general combination" claims on the ground of double patenting, in view of his patent 1,628,626. The Board of Appeals did not specifically enumerate this ground of rejection; a general affirmance being made of the Examiner's decision.
As to this point, it is argued by the appellant that this ground of rejection is not now before the court, inasmuch as the Board did not refer to it. On the other hand, the Solicitor for the Patent Office argues that a general affirmance by the Board of the decision of the Examiner is equivalent to an affirmance of every reason for rejection given by the Examiner; that, if some specific reason for rejection is given by the Examiner, which does not meet with the approval of the Board, it is the duty of the Board to so hold in its decision.
Section 482, Rev. St. (35 USCA § 7, 44 Stat. 1335), so far as relevant, provides:
"* * * The Commissioner of Patents, the first assistant commissioner, the assistant commissioners, and the examiners in chief shall constitute a board of appeals, whose duty it shall be, on written petition of the appellant, to review and determine upon the validity of the adverse decisions of examiners upon applications for patents and for reissues of patents and in interference cases."
It being made the statutory duty of the Board of Appeals "to review and determine upon the validity of the adverse decisions of examiners," it would seem that this duty is not fully performed without a review of all adverse decisions by the Examiner. A general affirmance must be taken as an affirmance of all such adverse decisions, even though not specifically referred to. This, we think, has been the practice of the Patent Office.
It therefore follows that where, as here, the Board of Appeals has affirmed the decision of the Examiner in rejecting the claims of appellant on certain grounds and upon certain named references, which references are also cited by said Board in its decision, the affirmance should be held to have the legal effect of a rejection upon the grounds and references cited by the Examiner, and not expressly reversed by the Board.
The same thought must have been in the minds of the attorneys for appellant, for the first assignment of error to this court is as *783 follows: "1. The Board of Appeals erred in affirming the reason of the Primary Examiner finally rejecting claims 1, 4, 6, 7, 8 and 10 of the above entitled application."
This in the opinion of the court, is a sufficient statement of the reasons of appeal to bring before this court for consideration the various grounds of rejection of appellant's claims urged by the Examiner and affirmed by the Board of Appeals, and raises directly the correctness of each such adverse ruling. Such statement of reasons must be construed as having read thereinto such various grounds of rejection. It is a sufficient statement of appellant's "reasons of appeal, specifically set forth in writing," as provided in section 4912, Rev. St. (35 USCA § 60).
This court is not disposed to apply, in these cases, the rigid and inflexible rules as to assignments of error sometimes applied by the courts in other proceedings. The statute should be liberally and reasonably construed, and its purpose to give to parties appealing to this court from Patent Office decisions a speedy and effective revision thereof should not be defeated by a highly technical construction of the written "reasons of appeal." If the court and the Patent Office are advised, by these written reasons, of the questions at issue, that is sufficient to enable the court to "revise the decision appealed from in a summary way." Section 4914, Rev. St. (35 US CA § 62).
The matter of the statement of such "reasons of appeal" has been referred to by this court in several cases. In Re Schneider, 39 F.(2d) 278, 17 C. C. P. A. 952, the applicant sought to make an amendment and to add a new claim on the date appeal was taken to the Board of Appeals, which amendment was denied by the Examiner, and the Board refused to consider the amendments and additional claims. There was no assignment of error in this court as to said ruling by the Board, and we expressed the opinion that we might, therefore, disregard the point. However, no such question being raised by counsel, we considered it.
In Mas v. Root, 54 F.(2d) 435, 436, 19 C. C. P. A. 819, we said that we did not feel called upon to determine whether the party Mas reduced his invention otherwise than by filing his application, as the "question was not specifically set out in the reasons of appeal." Furthermore, it appears from the record that Mas made no such claim in this court.
In Southgate v. Greene, 57 F.(2d) 374, 19 C. C. P. A. 1129, a patent interference proceeding, the party Greene proffered a part of one of his applications upon which he claimed priority. In the appellant's argument in this court, the point was raised that appellant had the right to inspect the entire application. We stated that we would not consider the point, as it was not assigned as error in the reasons for appeal.
In Derby Oil Co. v. White Star Refining Co., 62 F.(2d) 984, 20 C. C. P. A. ___, a cancellation proceeding, we refused to consider two preliminary questions, stating that no assignments of error had been made upon the same. The first question was the claim of continuity of title; the second, an objection to the introduction of certain photostats in evidence. The record shows that these matters were not raised before, nor passed upon by, either of the Patent Office tribunals, were not assigned for error here, and were raised for the first time by argument, in this court. In such case they did not constitute averments of reasons for appeal, and we so stated.
The reason for appeal above quoted must be understood as raising for our consideration each ground assigned by the Examiner and affirmed by the Board. We find nothing in the cases above commented upon which is out of harmony with this view. There seems to be no real necessity, in order to raise the question here, that each ground of refusal given by the Examiner and affirmed by the Board should be set out, seriatim.
Such expressions as appear in the opinions of this court with reference to the office of an assignment of error, in the exercise of the customs jurisdiction of the court, are not thought to be applicable to patent appeals, such as that now before us, the statutory authority being vastly different in the two jurisdictions.
The rejected claims will be considered in view of these conclusions. Claims 1, 4, and 7 were said by the Board to distinguish from the reference Putnam only in the statement that the side wall of the brakedrum is dished rearwardly, and this feature, it is said, is met by the references Klocke and Trepier. We are in agreement with this conclusion. Trepier, it is argued by appellant, does not show "means * * * whereby load, side-thrust and torque are transmitted through the drum," because he shows a member, to the exterior of the drum, extending from the connecting member directly to the hub. This is true, but, while this may supplement the side wall of the drum, the connecting member, *784 nevertheless, does transmit load, side-thrust, and torque through the drum.
Claim 6 was properly rejected on reference to Putnam, Trepier, and Reid.
The case is different, however, as to the rejection of claims 8 and 10 on reference to Putnam and Trout. These claims, as will be observed, are based upon a structural feature which consists in forming that portion of each connector, where it is bolted to the brakedrum, in such a manner that the central portion thereof is raised and does not come in contact with the side wall of the brakedrum. As stated in claim 10, the connector is there "spaced from the drum," and the connecting bolts extend through the connectors and drum at points "which are spaced from the drum." This feature gives the highly useful result of retaining the nuts upon said connecting bolts in much the same manner as if they were retained by lock washers.
This feature is not claimed to be shown by Putnam. Trout is relied upon. Trout shows a disk or connecting member, made of sections welded together. Each of these sections has a curved, hollow rib along its inner margin, and is provided with an inner, curved, lateral flange which bears upon a flange of the hub when the wheel is assembled. A depression or concave recess is pressed in the hollow rib of each section of the disk, all of which are used to connect hub and disk by means of studs and ball nuts.
As disclosed by Trout's drawings, the circular inner margins of these concave recesses, when the wheel is assembled, rest upon and contact with the flanges of the hub. The ball nuts, as recited in Trout's specification, "are then screwed upon the studs until the convex surfaces of the nuts seat in the depression."
The Solicitor for the Patent Office, in describing this feature, says: "The rim is supported by several sections 21, each having at its inner end a curved hollow rib 22 which makes a two-point contact with the support (hub flange 11) with a securing means located radially between the two spaced contact points."
Trout nowhere discloses or teaches any such structure as appellant has disclosed and claimed in his connection of drum and connectors, in spaced relation to each other. He makes no claim covering this feature. Appellant does show and claim it, and, in so far as is apparent, he has thereby contributed a useful element to this type of wheel structure. The Solicitor states: "It may further be conceded that if the points of difference enumerated involve an inventive advance over the claims of appellant's patent (or what amounts to the same thing, over the claims or showing of Putnam as to the `general combination' mentioned by the examiner), then the appealed claims should be allowed."
We are of opinion that the feature just discussed does constitute an inventive advance in the art, and hence are of opinion that claims 8 and 10 of appellant's application should be allowed, in so far as this ground of rejection is concerned.
It will be observed that no claim is made by the Solicitor that the elements of the claims do not sufficiently coact with each other to constitute a proper combination claim. No such suggestion was made by either tribunal in the Patent Office or here. Hence this point is not involved in the present appeal. In re Tucker and Reeves, 54 F.(2d) 815, 19 C. C. P. A. 810.
As to double patenting, the Examiner has stated: "The applicant has carefully pointed out that his patent No. 1,628,626, claims the `general combination' as broadly as Putnam. See page 3, paragraph 2 of paper No. 10. Since this is true the claims are further respectable on the grounds of double patenting in view of the references showing the specific features under the authority of ex parte Hammond and Hammond, 1922 C. D. 15, and ex parte Chapman, 1924 C. D. 143 wherein it was held that in considering double patenting it is proper to consider the prior art in connection with the subject matter claimed previously by the applicant."
Reference to this patent to Wagenhorst discloses that appellant therein claimed a general combination of a wheel comprising a rim, a series of connectors extending inwardly therefrom and attached to a brakedrum, which brakedrum became a part of the wheel structure. The patent, however, makes no disclosure of, or claim for, a combination having the particular construction called for by said claims 8 and 10, and hereinbefore referred to. Therefore there cannot be said to be double patenting of the subject-matter as set out in these two claims.
The decision of the Board of Appeals is affirmed as to its rejection of claims 1, 4, 6, and 7 and reversed as to claims 8 and 10.
Modified.
LENROOT, Associate Judge (dissenting).
I am compelled to dissent from so much of the decision of the majority as reverses the *785 decision of the Board of Appeals as to claims 8 and 10 of appellant's application. My grounds of dissent are three in number: (1) That the point upon which the decision of the Board is reversed with respect to said claims 8 and 10 is not raised in the reasons of appeal, is not raised in the brief of appellant, and, to my best recollection, was not even referred to by appellant's counsel in oral argument before us; (2) that the Board of Appeals was correct in holding that the element of the claims upon which the majority reverses the decision of the Board is disclosed by the reference Trout et al.; and (3) that said claims are not patentable combinations, and the Board of Appeals committed no error in holding them to be unpatentable.
The only reason of appeal upon which the opinion of the majority might rest reads as follows: "I. The Board of Appeals erred in affirming the reason of the Primary Examiner finally rejecting claims 1, 4, 6, 7, 8 and 10 of the above entitled application."
Inasmuch as the claims mentioned in said reason of appeal are all of the claims that were involved before the Board, and are all of the claims that are before us upon this appeal, it is my opinion that this reason of appeal fails to comply with section 4912, Revised Statutes (35 USCA § 60), which requires an appellant to file in the Patent Office his reasons of appeal "specifically set forth in writing." By section 4914, Revised Statutes (35 USCA § 62), it is provided that this court shall confine its revision "to the points set forth in the reasons of appeal." A reason of appeal such as that quoted above amounts to nothing more than a general reason of appeal stating that the Board of Appeals erred in its decision, in which form it would clearly be in violation of the statute. It seems very clear that Congress, in the enactment of sections 4912 and 4914, Revised Statutes (35 USCA §§ 60, 62), intended that no blanket reasons of appeal such as that above quoted should be regarded as effective to present any question to the court, but that each reason of appeal should be specifically set forth in writing for the purpose of informing the court and opposing counsel of the particular points relied upon by an appellant, and that the jurisdiction of this court as to reversal should be confined to the reasons of appeal specifically set forth.
Reasons of appeal are analogous to assignments of error in courts of general jurisdiction. In the case of Phillips & Colby Construction Company v. Seymour, 91 U. S. 646, 648, 23 L. Ed. 341, the court in its decision said: "The object of the rule requiring an assignment of errors is to enable the court and opposing counsel to see on what points the plaintiff's counsel intend to ask a reversal of the judgment, and to limit the discussion to those points. This practice of unlimited assignments is a perversion of the rule, defeating all its purposes, bewildering the counsel of the other side, and leaving the court to gather from a brief, often as prolix as the assignments of error, which of the latter are really relied on. * * *"
While the court was there speaking of a multiplicity of assignments of error, the observations there made are even more pertinent with respect to a general assignment.
In the case of Texas & Pacific Railway Company v. Archibald, 170 U. S. 665, 18 S. Ct. 777, 778, 42 L. Ed. 1188, the court in its opinion stated: "There are six assignments of error, the first of which may be at once dismissed from view, as it simply avers that the court of appeals erred in affirming the judgment of the trial court, without any specification of any particular error committed. * * *"
This court in the following cases has refused to consider particular points raised before us upon the ground that such points had not been specifically set forth in writing in the reasons of appeal: In re Schneider, 39 F.(2d) 278, 17 C. C. P. A. 952; Mas v. Root, 54 F.(2d) 435, 19 C. C. P. A. 819; Southgate v. Greene, 57 F.(2d) 374, 377, 19 C. C. P. A. 1129; Derby Oil Co. v. White Star Refining Co., 62 F.(2d) 984, 20 C. C. P. A. ___.
In Southgate v. Greene, supra, this court said: "Finally, appellant insists that he had a right to inspect the whole of Greene's 1926 application. If this were a matter in which we might take jurisdiction, as to which we express no opinion, it would not be possible for us to do so, as appellant has assigned no error in that respect in his reasons for appeal."
This court, in the exercise of its customs jurisdiction, in the case of United States v. Brenner Co., 19 C. C. P. A. 105, T. D. 45243, said: "The office of an assignment of error is to enable the court and opposing counsel to see on what points the appellant's counsel intend to ask a reversal of the judgment and to limit the discussion to these points. * * *"
The majority opinion makes a statement that is surprising to me. It is as follows: "This court is not disposed to apply, in these cases, the rigid and inflexible rules as to assignments of error sometimes applied by the courts in other proceedings." Later in the *786 opinion it is stated that "such expressions as appear in the opinions of this court with reference to the office of an assignment of error, in the exercise of the customs jurisdiction of the court, are not thought to be applicable to patent appeals, such as that now before us, the statutory authority being vastly different in the two jurisdictions."
With reference to the language first quoted, I would observe that in courts of general jurisdiction assignments of error are usually governed by rules of court and not by statute, and such courts may, under their rules, exercise a discretion in considering plain errors appearing upon the record, though not assigned. Such is the rule in the Supreme Court of the United States. Mahler v. Eby, 264 U. S. 32, 44 S. Ct. 283, 68 L. Ed. 549. This court, however, in our patent jurisdiction has no such power because the statute expressly prohibits our revising a decision of the Board of Appeals for a reason not specifically assigned.
Inasmuch as courts of general jurisdiction are not bound by an inflexible rule such as governs this court, therefore the cases in which such courts apply the rule for which I here contend are especially pertinent.
The quotation from the majority opinion with respect to cases arising under our customs jurisdiction is also surprising to me. There is a radical difference in the law governing our respective customs and patent jurisdictions. In our customs jurisdiction the statute provides that an application for review by this court of a decision of the United States Customs Court shall contain "a concise statement of errors of law and fact complained of," but there is nothing in the statute prohibiting this court from considering an error not assigned, while in our patent jurisdiction we are expressly prohibited from revising a decision of the Board of Appeals of the Patent Office upon a reason of appeal not specifically set forth in writing. Therefore our jurisdiction in patent appeals is more limited than is our jurisdiction in considering appeals from the Customs Court, and the cases in our customs jurisdiction applying the rule (where our jurisdiction does not prohibit our making exceptions to said rule) are especially pertinent.
In the consideration of patent appeals, we are by statute much more limited in considering errors than are courts of general jurisdiction in considering appeals before them, and much more limited than is this court in the exercise of our customs jurisdiction.
For these reasons I am utterly unable to understand upon what theory the court holds that we, in the exercise of our patent jurisdiction, may be more liberal in considering errors than courts of general jurisdiction or this court in the exercise of its customs jurisdiction.
It is my opinion that a general reference to reasons given by Patent Office tribunals is not a compliance with the statute, for it was never intended that the court should be compelled to examine and ascertain all of the reasons that may have been given by the Board of Appeals of the Patent Office for its action, but the reasons complained of must be specifically stated in the reasons of appeal. If such a reason of appeal as that above quoted shall be held to be sufficient to cause this court to reverse the Board, it seems to me that hereafter appellants to this court will content themselves with similar general reasons of appeal, without this court or opposing counsel having any real knowledge of what points actually are relied upon by appellant for reversal, and it will mean a very radical change in the practice that has been consistently followed for over half a century.
These observations are particularly pertinent with respect to the case at bar, for not only is the point upon which the majority reverses the decision of the Board not specifically pointed out in the reasons of appeal, but it is not even mentioned in appellant's brief. On the contrary, the brief sets out the reasons of appeal relied upon, and the assignment hereinbefore quoted is not one of those set out. Furthermore, under the heading "The Question to be Decided," the brief states: "The issue presented by these reasons of appeal, for decision by this Court, is whether a rejection of the claims upon a patent issued on a copending application may be sustained, when such patent does not claim the rejected invention, and the applicant has made oath to facts showing that the invention, insofar as it is disclosed in the patent, was completed by him prior to the patentee's filing date."
Even if the reason of appeal might, by a most liberal construction, be deemed sufficient to raise the point upon which the majority reverses the Board, the foregoing quotation from appellant's brief clearly shows that appellant never contemplated raising such point. This is further shown by later portions of the brief in which it is argued that Putnam is not a proper reference, after which the following is found: "* * * We submit, therefore, that it is most improper to build up on evidence of prior invention, by *787 adding to it the showings of patents in the prior art. * * *"
Here is a clear implication that appellant does not contend that the elements of the claims involved are not shown in the references, but that it was improper to combine them as was done by the Board.
Furthermore, appellant's brief states: "* * * The rejection is based upon the theory that the Putnam patent establishes Putnam, prima facie, as the prior inventor of the general combination of a rim, hub, brake drum and spoke members rigidly connected to the rim and detachably connected to the brake drum. If Putnam is the prior inventor of this general combination, the rejection may be well founded. If, however, the applicant, and not Putnam, is the prior inventor of the general combination, the rejection must fail. * * *" (Italics ours.)
Finally, under the heading "Conclusion," appellant's brief states: "We maintain, therefore, that the Board of Appeals was in error in rejecting the six claims of this Wagenhorst application upon the Putnam patent. That patent could only have effect as evidence of prior invention by Putnam. Putnam did not claim the rejected invention and, therefore, an affidavit under Rule 75 was permissible. Such affidavit was presented and established the completion of the rejected invention, insofar as disclosed by Putnam, prior to Putnam's filing date. In view of this affidavit, it is no longer possible to say that the Putnam patent is evidence of prior invention by Putnam over Wagenhorst. Therefore, the rejection must fall, and the Putnam patent should have been eliminated as a reference and the claims allowed."
Here again it is made clear that appellant does not rely upon the point upon which the majority bases its reversal of the board with respect to said claims 8 and 10.
With respect to the oral argument before us, it is my recollection that the point upon which the majority reverses the Board was not even mentioned; certainly it was not argued.
It is my opinion that the court should not, as a matter of sound practice and policy, go out of its way to search for errors not pointed out either in the reasons of appeal or in the brief of counsel.
With regard to my second ground of dissent, it is my opinion that the Board of Appeals correctly held that the element upon which the majority reverses the Board is disclosed by the reference Trout. The pertinent language in claims 8 and 10 with reference to this element is as follows: "* * * The inner portion of each member engaging the brakedrum at radially spaced points and being spaced from the drum between such points, bolts extending through the drum and the inner portions of said members at the parts of the latter which are spaced from the drum, and nuts screwed on the bolts. * * *" (Italics ours.)
The majority opinion holds that the reference Trout does not disclose "any such structure as appellant has disclosed and claimed in his connection of drum and connectors, in spaced relation to each other."
In my judgment, the drawings of the Trout patent show two-point contact between the metal segments 21 and the hub flanges 11. This two-point contact results from the rib embodied in each of said segments at the point opposite said flanges. In this rib is a perforation through which the stud bolt passes, and this perforation is depressed to receive the convex surface of the ball nut 14. It is apparent that the periphery of this perforation does not lie in the same plane as the outside edges of the rib. Therefore, when the ball nut is tightened, there is the same condition of clearance between the segment and the hub flange at the point where the bolt passes as obtains in the disclosure of appellant, and will result in the same tension being exerted upon the nut to retain it in position after it is once tightened.
Appellant's counsel apparently had the same view with reference to this matter, because, if he had entertained the view expressed in the majority opinion, he certainly would not have ignored it in his reasons of appeal, in his brief, and in his oral argument before us.
Furtherance, as hereinbefore observed, appellant's brief contains the following: "* * * If Putnam is the prior inventor of this general combination, the rejection may be well founded. * * *"
This statement is inconsistent with the thought that appellant ever contemplated the point upon which the reversal of the Board by the majority is based.
Finally, the majority opinion contains the following: "* * * These claims, as will be observed, are based upon a structural feature which consists in forming that portion of each connector, where it is bolted to the brakedrum, in such a manner that the central portion thereof is raised and does not come in contact with the side wall of the brakedrum. As stated in claim 10, the connector is there `spaced from the drum,' and the connecting *788 bolts extend through the connectors and drum at points `which are spaced from the drum.' This feature gives the highly useful result of retaining the nuts upon said connecting bolts in much the same manner as if they were retained by lock washers."
If an element of this kind makes patentable a combination which, without such element, would not be patentable, then it would seem that the placing of a simple lock washer upon each of the bolts for the purpose of permanently retaining the nuts in place would likewise make a combination patentable which otherwise would be unpatentable. I do not think that the majority would have reversed the Board on claims 8 and 10 if a simple lock washer had been described instead of the structure accomplishing the same purpose disclosed in the application of appellant, for in such case it would be clear that there was not such coaction between said lock washers and the other elements of the combination as to bring the claims within the rule of patentable combinations. Likewise I am of the opinion that there is no such coaction of the element of spaced relation of the connectors and drum with the other elements of the claims as to render the combination patentable.
In the case of In re Germantown Trust Co., 57 F.(2d) 365, 366, 19 C. C. P. A. 1140, we held that: "* * * A combination, to be patentable as such, must disclose a novelty of co-operation between its elements which produces a new result and amounts to invention, and the mere fact that some elements are themselves novel and possibly patentable as individual elements does not render the combination containing them patentable in the absence of such novel co-operative relation in the combination itself."
In my opinion, the decision of the Board of Appeals should be affirmed as to all of the claims on appeal.