27 C.C.P.A.(Patents)

## LEVER BROS. CO. v. SITROUX CO., Inc.

### Patent Appeal No. 4194.

Court of Customs and Patent Appeals.

Feb. 5, 1940.

Spencer A. Studwell and Harry A. English, both of New York City, for appellant.

W. Lee Helms, of New York City, for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

Appellant has appealed here from a decision of the Commissioner of Patents, affirming that the Examiner of Interferences, dismissing an opposition brought by appellant against the registration by appellee of the word "Sit-Ru-Lux" as a trade-mark for "Toilet Tissues" (toilet paper). The opposition is based upon the prior use and registration of the term "Lux" as a trade-mark for toilet soap, such prior use and registration being clearly shown.

The tribunals of the Patent Office pointed out that the differences in the marks and the differences in the characteristics and uses of the goods warranted the conclusion that there would be no likelihood of confusion in a statutory sense.

Appellant here, after referring to the term "Lux" which appears in the mark of each of the parties, has the following to say (omitting record citations) regarding the similarity of the goods upon which the marks are used:

"(1) Both toilet paper and toilet soap are ordinary household articles which are

put up in small packages and sold for a small price.

"(2) Both are sold by the same wholesalers and jobbers and by the same retailers. In retail stores these articles are associated and are sold in the same departments.

"(3) Both are purchased by the same classes of customers.

"(4) Both are used for the same purpose, to wit, the cleaning of the human body. They are kept and used in the same room in the average household. It is a matter of common knowledge that in many instances soap is used to supplement or complete the work of the paper. That toilet soap and toilet paper are associated in the minds of those using them (a large majority of the entire population) is apparent."

Appellant also argues that there are additional facts which enhance the likelihood of confusion and states that appellant's soap is advertised as "toilet soap"; that it is generally known that appellant has advertised using the soap to remove stale cosmetics, dust and dirt from the pores of the skin, and that the dirt and stale cosmetics are often wiped off by facial tissues to which reference is sometimes made as "toilet tissues" and which tissues are manufactured and sold under a different trade name by appellee.

There is no contention here that appellee's mark is used on the character of so-called "toilet tissues" which are used to remove stale cosmetics from the face, although there is some proof in the record to the effect that the Sitroux Company does manufacture a so-called "facial tissue" which is labeled "Sitroux" but which is not sold under the mark "Sit-Ru-Lux" involved here.

Appellant in its brief refers to the term "toilet tissues," on which the trade-mark "Sit-Ru-Lux" is used, as being "toilet paper," and stresses the fact that appellee has used the phrase "toilet tissue made of 'Sitroux' facial tissue" on the labels of its toilet paper rolls, and that this consideration will enhance the likelihood of confusion.

While the appellee's application for registration refers to its goods as "toilet tissues" its brief defines the term in the following language: "toilet paper, sometimes termed 'toilet tissues', and sold by it in the usual rolls." On opposer's Exhibit 3, which is a label which goes around a roll of appellee's toilet paper, appears the following: "The luxury of facial tissue made into toilet tissue." It appears of record that there is upon the market a facial tissue and a toilet paper made by the same manufacturer and bearing the same trademark "Aimcee." It is also emphasized here by appellant that its mark was first registered in 1900 and that it has spent $25,000,000 in advertising its "Lux" toilet soap and $35,000,000 in advertising "Lux" soap flakes and that such advertisement took place "extensively in magazines and newspapers but also by means of practically every other media available for advertising such as the radio, couponing, window, store and shelf displays, car cards, subway and elevated posters, miscellaneous programs and trade paper advertisements" and that "This advertising has been national in scope and has covered practically the entire United States."

The Examiner of Interferences in his decision, in referring to the *facial tissue* subject matter, had the following to say: "In the opposer's brief considerable reference is made to certain merchandise not here in issue, namely, what is known to the trade as facial tissue, a paper product adapted for use in the removal of cosmetics. It may be that such merchandise, as the opposer contends, is to some extent related to the before mentioned goods of the parties, but in any event, this question is deemed irrelevant and not material here."

As the issue is presented here, it is our view that the Examiner of Interferences was correct in the above-quoted statement, and that the issue presented here involves a consideration of the trade-mark "Lux" used on toilet soap, and the trade-mark "Sit-Ru-Lux" used on toilet paper, and that the term "toilet paper" is not to be understood as including facial tissues.

It may be said at the outset that in cases like that at bar where the registration of one mark over a similar mark for goods of the same class is involved, there is rarely any decision of any court that is sufficiently analogous to be absolutely controlling. One reason this is true is because, as has been frequently stated, the question of confusion resulting from the similarity of the marks and goods is largely one of individual opinion. Where the circumstances in a decided case differ, even only to a slight degree, from those in a case to be decided,

it is often difficult to determine just what effect those differences should be given.

And so it is in the case at bar where we have the contest between "Sit-Ru-Lux" for toilet paper and "Lux" for toilet soap. There is a difference in the marks and there is a difference in the goods. It is true that appellee who seeks to register the term "Sit-Ru-Lux" has taken the entire mark of the appellant and used the same in connection with other syllables representing the phonetic spelling of its corporate name upon goods which obviously belong to the same class. It being a close question as to whether the stated circumstances suggest the likelihood that statutory confusion will result from the concurrent use of the two marks in the manner stated, there might be much difference of opinion among reasonable minds.

■ After much consideration, we are of the opinion that there is such a similarity of the marks (the whole of appellant's mark appearing in that of appellee) that concurrent use of the same on the goods of the respective parties is likely to lead to confusion within the meaning of the trademark statute. 15 U.S.C.A. § 81 et seq. Certainly there is at least a reasonable doubt upon the question, and the familiar rule applies that such doubt should be resolved against the applicant who has a wide field from which to select its mark to distinguish its goods if it really wishes to distinguish them and not reap where it has not sown.

A lengthy discussion of the cited and other cases, under the circumstances and for the reasons before stated, is not here required. However, some cases cited by the appellee in which registration was granted may have some bearing on the issue presented and certain cases cited by appellant would seem to have about the same bearing on the other side of the question. We think the following cases in which registration was denied might be cited as supporting, to some extent, the view herein taken: Kotex Co. v. Clarence M. McArthur, 45 F.2d 256, 18 C.C.P.A., Patents, 787, which involved the trademarks "Kotex" for sanitary napkins and "Rotex" for vaginal syringes; Cluett, Peabody & Co., Inc. v. Samuel Hartogensis, 41 F.2d 94, 17 C.C.P.A., Patents, 1166, in which substantially identical "Arrow" trade-marks were used on the goods of the parties, to wit, collars and shirts in one instance and collar buttons in the other;

and Bon Ami Company v. McKesson & Robbins, Inc., 93 F.2d 915, 25 C.C.P.A., Patents, 826, which involved the trademark "Bon Ami" on soap in cake and powder form and on toothpaste and "Shav-Ami" on shaving cream.

Now, it will be noticed that the above cases involve facts differing from the facts at bar in that in the first case cited (the Kotex case) the marks had greater similarity and the goods of one were more closely associated and related than are the goods of the respective parties at bar; that in the second case, both "Arrow" trademarks were substantially identical and the goods of the parties were used conjointly; and that in the third case the applicant did not seek to register all of the trade-mark (Bon Ami) of the registrant.

The cases of Purex Corp., Ltd. v. United Drug Co., 67 F.2d 918, 21 C.C.P.A., Patents, 753, and Tetley & Co., Inc. v. Bay State Fishing Co., 82 F.2d 299, 23 C.C.P.A., Patents, 969, have been called to our attention. In the first case, the trade-mark "Purex" was used upon a bleach and water softener, and the marks "Rex," "Rexall," and "Puretest" were used variously upon medicines, pharmaceutical preparations, hair tonics and perfumes. While all of the "Rex" mark was included in the term "Purex" it was the view of the court that [67 F. 2d 920, 21 C.C.P.A., Patents, 753]: "The word 'Purex,' in itself, has neither the appearance nor the sound of 'Rex,' 'Puretest,' or 'Rexall.' Considering these facts in connection with the difference in character and uses of the respective goods, in our opinion, the marks are not confusingly similar."

In the Tetley & Co., Inc. case, supra, the competition was between the trademark "Budget Special" on fish in cans and "Tetley Budget Tea" for tea. It was there held that taking into account the differences in the marks and dissimilarity of the goods confusion was not likely to result and registration was permitted. It will be noticed that there was a wide dissimilarity between the goods, more so than there is in the case at bar, and that the applicant only sought to appropriate the one word "Budget" whereas in the instant case the entire trade-mark of the appellant is taken.

■ A consideration that we think is important is present in the case at bar and involves the fact that there is always more likelihood of confusion relative to the sale of goods where all of a trade-

mark is taken and appropriated by another, if such trade-mark is arbitrary and fanciful in character. After much advertising, that character of mark seems to more definitely indicate the origin of its user's goods than a mark which consists of a word in common, ordinary use. We have in mind such marks as "Kodak," "Bon Ami," and "Kotex."

In the Bon Ami Company case, supra, we said: " * * * It is true that there is a difference in the marks and a difference in the goods, but it seems to us that, since the mark 'Bon Ami' is for a product of everyday use, is widely known, and is unusual in its arbitrary character, confusion will be more likely to occur than under other circumstances. * * * It is difficult to understand just why appellee should choose such a mark when the field was so broad to select from. It is hardly supposable that a large, reputable concern like the appellee would seek to profit from confusion, and there is nothing in this case to indicate that that is its desire. Nevertheless, we think there is a likelihood of confusion resulting in the concurrent use of the two marks and, like the Examiner, we apply the rule of doubt which requires that doubts, if any, as to confusion, must be resolved against the newcomer."

■ We think that all the quoted language applies to the case at bar.

It is not to be overlooked that in speaking of the goods of both parties, the term "toilet" is used. Both articles are used in the toilet room and whether or not in the strictest sense the use of both is in the act of making the toilet, there certainly is a close analogy between their respective uses and other toilet operations. Webster's New International Dictionary speaks of "toilet paper" as "a thin paper for use in the toilet rooms, etc.," and of a "toilet room" as "a room for making the toilet; a lavatory or wash room, usually with water closets; * * *."

For the reasons stated, the decision of the Commissioner of Patents is reversed.

Reversed.

LENROOT, Associate Judge (specially concurring).

I agree to the conclusion reached in this case, but I cannot agree with the statements in the majority opinion that the question of confusing similarity of the respective marks is a close one, or that there might be much difference of opinion upon this question among reasonable minds. We have held that appellant's mark "Lux" is a unique, arbitrary trade-mark. Lever Bros Co. v. Riodela Chemical Co., 41 F.2d 408, 17 C.C.P.A., Patents, 1272.

Appellee has appropriated this mark in its entirety and has merely placed before it a part of its corporate name phonetically spelled. Such an appropriation in my mind should not be considered as presenting a close question of confusing similarity of the respective marks, for it is clear to me that the word "Lux" is the dominating portion of appellee's mark and therefore it should be held that, without question, the marks in issue are confusingly similar.

HATFIELD, Associate Judge, concurs in this opinion.