33 C.C.P.A.(Patents)

**MAGITEX CO., Inc., v. JOHN HUDSON MOORE, Inc.**

**Patent Appeal No. 5121.**

Court of Customs and Patent Appeals.
March 6, 1946.

M. E. Jones, of Washington, D. C., for appellant.

Jones & Roe, of New York City (Edward G. Roe, of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the Commissioner of Patents, acting

through the First Assistant, 62 U.S.P.Q. 170, affirming the decision of the Examiner of Trade Mark Interferences sustaining the opposition of appellee to the application of appellant filed October 21, 1942, for registration of the word "Huntsman," continuously used by appellant since July 1, 1942, as a trade-mark for after shaving lotion.

In its notice of opposition appellee relies upon its ownership of the trade-mark "Sportsman" registered on December 23, 1941, for after shaving lotion, hair lotion, and talcum powder.

The opposition is based upon that proviso to section 5 of the Trade Mark Act of February 20, 1905, which states: "That trade-marks which * * * so nearly resemble a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers shall not be registered." 15 U.S.C. sec. 85(b), 15 U.S.C.A. § 85(b).

The goods are identical in part and it is not here disputed that the merchandise is of the same descriptive properties or that ownership and priority of use of appellee's trade-mark reside in appellee:

The sole point to be determined therefore is whether the contested marks when concurrently used by the parties on identical merchandise or merchandise of the same descriptive properties so nearly resemble each other as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers as to the origin of the goods.

Appellant contends that each of the marks end in the identical word "man," being a part of the final letters "tsman"; and that—

"* * * Said 'man' has no Trade-mark significance of value, and is descriptive as the goods for both parties are used only by men. This leaves for comparison 'sports' or 'sport' of Opposer-Appellee, and 'hunts' or 'hunt' of Applicant-Appellant."

It is a matter of common knowledge that the ordinary person in making a purchase of such an article as after shaving lotion is not likely to remember, nor is he bound to look for and analyze, the details of the respective marks and labels of competing vendors, even if he should happen to know as a matter of fact that there are competing vendors. It may be noted also that under modern methods of merchandising a purchaser of the goods may frequently have no opportunity to make such an examination and comparison.

Before the tribunals of the Patent Office the contested words were considered as a whole and it was correctly pointed out by the Examiner of Trade-Mark Interferences that the words "Huntsman" and "Sportsman," because of the identity in their last five letters, have certain similarities in sound and appearance. Furthermore, Webster's International Dictionary (1939) was correctly quoted by the examiner to define "sportsman" as "one who practices the sports of the field, especially hunting or fishing"; and Funk & Wagnalls New Standard Dictionary (1930) was also quoted in defining "sportsman" as "a person who engages in field sports; also a hunter of big game."

Appellant urges, among other things, that both the examiner and the commissioner in utilizing this "restricted definition" in the case at bar failed to evaluate the marks in their true atmosphere and environment. Appellant points out that the word "sport" or "sports" forms the dominant part of appellee's mark, and "one can select from many definitions, perhaps fifty or more, found in columns of perhaps four, six or seven inches, approximately, in depth, and found in Funk & Wagnalls' Company Dictionary, * * * as well as in Webster's New International Dictionary * * *." Appellant then proceeds to cite other dictionary definitions to show different meanings of the word "sportsman."

The meanings attributed to the contested words by the tribunals of the Patent Office are the generally accepted definitions of the words as they are used here. If there is any doubt as to the meaning of the word "Sportsman" as it is used in appellee's mark, however, its meaning is positively established by the interpretation of the word as defined by appellee.

The accompanying drawing and specimen of appellee's mark, as actually used upon its goods, graphically depicts on the face of the mark the distinctive figure of a mallard duck rising on the wing from a marsh or swamp extending into the back-

ground. Beneath that illustration is the word "SPORTSMAN," capitalized.

The accompanying drawing and specimen, as actually used upon its goods and as submitted by appellant with his application for registration, depict on the face of the mark a hunter with his gun raised while an accompanying dog is depicted in the act of pointing. Overhead a duck is depicted in flight and in the background a group of pine trees are disclosed against the horizon. Obliquely across the top of the mark the word "Huntsman" is written in large letters.

It is apparent from the description of the contested marks, as hereinbefore noted, that the term "huntsman" as it is used by appellant has the same general significance in meaning as appellee's term "sportsman."

Appellant's contention that the syllable "Man," which is the ultimate common to both words, is but descriptive and therefore not subject to exclusive appropriation by appellee is without merit. The ordinarily accepted and primary meaning of the word "man" is that he is a human being and an adult male person as distinguished from a woman or child. The word is in no way descriptive of the merchandise here involved. See In re One Minute Washer Company, 95 F.2d 517, 25 C.C.P.A., Patents, 978.

Appellant in support of its position here devotes several pages of its brief to the citation of decisions of the court in litigation involving other trade-marks. The citation of such cases is of little value, however, in an opposition proceeding for the reason that each case must rest upon its own distinctive facts. See Lactona, Incorporated v. Lever Brothers Company, 144 F.2d 891, 32 C.C.P.A., Patents, 704; McKesson & Robbins, Inc. v. American Foundation For Dental Science, 150 F.2d 420, 32 C.C.P.A., Patents, 1235.

The respective marks considered as a whole so nearly resemble each other in sound, meaning, and appearance as to be likely in our opinion to cause confusion in the mind of the public as to the origin of the goods when concurrently used by the parties on goods of the same descriptive properties.

The decision of the Commissioner of Patents is accordingly affirmed.

Affirmed.