39 C.C.P.A.(Patents)

## MOORE v. PROCTER & GAMBLE CO.

### Patent Appeal No. 5817.

United States Court of Customs and Patent Appeals.

Dec. 18, 1951.

Johnson and Worley, JJ., dissented.

Parry, Miller & Peverill, Washington, D. C. (Edmund H. Parry, Jr., Washington, D. C., of counsel), for appellant.

Allen & Allen, Cincinnati, Ohio (Erastus S. Allen, Cincinnati, Ohio, of counsel), for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Assistant Commissioner of Patents, 85 U.S.P.Q. 176, acting for the commissioner in an opposition proceeding instituted by appellee, owner and prior user of the mark "Duz," together with the slogan "Does More," against the registration of appellant's mark "Duz Mor."

"Duz Mor" has been used since March of 1943 by appellant or its assignor in the sale in packages of louse powder for poultry, livestock and dogs. Appellee's mark on the other hand has been registered since September 21, 1920, and used by appellee or its predecessors, continuously and exclusively, in the sale of pulverant or granulated soap in packages for general laundry purposes designed primarily to clean towels,

garments, linens, dishes, household utensils, appliances, woodwork, etc.

Appellee took testimony and by its witnesses and documentary evidence established, in connection with the use of "Duz" on the packages, that appellee has likewise used in a trade-mark sense, or analogous thereto, the collateral term "Does More" not only on the packages themselves but also in nation-wide advertising, including nationally-known magazines, the press, and the radio. Appellee, by the expenditure of tens of millions of dollars in recent years for advertising, as hereinbefore described, has caused its trade-mark "Duz," the collateral slogan "Does More" and the product to which they are attached to become familiar household items in town and country throughout the nation.

In fact, it was established by appellee's evidence that appellee's goods were also effectively used, according to unsolicited testimonial letters from customers, read from time to time over appellee's network broadcasts, for washing dogs, cats, and livestock, thereby ridding them of ticks, fleas and lice; and as a spray for eliminating bugs, lice, and aphids from vegetable and flower gardens.

The annual sales of appellee's product for some years past have averaged in excess of one hundred and fifty million packages.

Appellee asserted various other registrations applied to its product, including the mark "Duz," republished by the Commissioner of Patents March 30, 1948, under section 12(c) of the Trade-Mark Act of July 5, 1946, 15 U.S.C.A. § 1062(c); the registration "Duzitall," dated June 24, 1890, and the registration "Duz-Win," dated August 29, 1916. The last two registrations have been renewed by appellee but were not pleaded in its notice of opposition, filed October 1, 1947, and hence need not be further discussed here.

The appearance and etymology of the competing marks here in issue, and appellee's slogan "Does More," are shown in large, boldface type. With appellant's application there was submitted a specimen of the mark "Duz Mor," used by its assignor, which specimen contains the impressive warning that an ingredient of the applicant's goods consists of DDT, a toxic poison which may be absorbed through the skin, especially from solutions, and providing therefor various directional antidotes.

Appellant also disclosed in the record that the suffix "Mor" in its mark "Duz Mor" is an abbreviation of the surname "Moore" which the original owner of the mark used upon a variety of goods. On that phase of the case, however, the law was stated by Mr. Justice Holmes in Waterman Co. v. Modern Pen Co., 235 U.S. 88 at page 94, 35 S.Ct. 91, at page 92, 59 L. Ed. 142, to the following effect: "But, whatever generality of expression there may have been in the earlier cases, it now is established that when the use of his own name upon his goods by a later competitor will and does lead the public to understand that those goods are the product of a concern already established and well known under that name, and when the profit of the confusion is known to, and, if that be material, is intended by, the later man, the law will require him to take reasonable precautions to prevent the mistake."

The Examiner of Trade-Mark Interferences dismissed the opposition October 31, 1949, on the stated ground that the goods of the competing parties were not merchandise of the same descriptive properties. The Acting Commissioner of Patents reversed that decision April 27, 1950, and the primary question raised by the reasons of appeal is whether there would be any reasonable likelihood of confusion as to the origin of the goods under section 5 of the Trade-Mark Act of 1905 should the parties concurrently use their marks on the merchandise here involved.

The pertinent provisions of the Trade-Mark Act of 1905 in the instant case read as follows: Sec. 5. "No mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trade mark on account of the nature of such mark * * * *Provided,* That trade marks which are identical with a registered or known trade mark owned and in use by another * * *, or which so nearly re-

semble a registered or known trade mark owned and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers shall not be registered * * *."

What constitutes "merchandise of the same descriptive properties" under the foregoing provisions of the Act of 1905 has been the subject of wide variance of opinion and conflict of judicial decisions throughout the Nation. Courts have swung first one way and then another. The term in fact has been such a source of bewilderment in trade-mark law that it was wholly and purposely eliminated by Congress in the enactment of the Trade-Mark Act of July 5, 1946.[1]

Appellee's uncontroverted evidence established, in addition to that which has been set forth hereinbefore, that "Duz is sold on a broad scale throughout the United States and is in general distribution in practically every retail grocery store in this country. Also in numerous drug, department and variety stores. Many of the retail grocery stores, particularly in rural areas, are general stores that handle practically everything farm homes need for personal requirements."

The fact that the opposer's product and that of the applicant are both related to cleanliness and both are sold in the same channels of trade to the same class of purchasers does not of itself endow the goods on which the competing marks are used with the same descriptive properties.[2] Nevertheless, under a long line of established authorities, too numerous to recite here, the fact that they are sold in the same establishments throughout the country is a factor, accompanied by the other circumstances of the case, which must be given substantial weight.[3]

The Court of Customs and Patent Appeals has held that the terms "same class" and "same descriptive properties" as used in section 5 of the Trade-Mark Act of 1905 are synonymous in their meaning.[4] This court has further pointed out that: "Obviously, merchandise of contending parties may be dissimilar, and yet the trade-marks thereon may so nearly resemble each other as to cause, when the merchandise is sold to the general public, confusion and mistake, and to make deceit an easy matter of accomplishment"[5] for the newcomer.

Therefore, this court has laid down the rule that the words "same class" and "same descriptive properties" were intended to be given a limited or an extended meaning and application depending on whether or not the use of identical or similar trade-marks would be likely to cause confusion in the mind of the public or to deceive purchasers as to the origin of the goods;[6] and that there is always more likelihood of confusion relative to the sale of merchandise where all of a previously registered trademark has been appropriated by the new-

1. For a valuable and concise discussion of the "bugbear" term "merchandise of the same descriptive properties," the present status of the law under the Act of 1905, and why Congress abolished its use in the Act of July 5, 1946, 15 U.S.C.A. § 1052, see the decision of Federico, Examiner in Chief, acting for the Commissioner of Patents, in the recent case of Greyhound Corp. v. Robinson Houchin Corp., 89 U.S.P.Q. 621, 624–625.

2. Kraft-Phenix Cheese Corp. v. Consolidated Beverages, Ltd., 107 F.2d 1004, 27 C.C.P.A., Patents, 803.

3. See, for example, Forst Packing Co., Inc., v. C. W. Antrim & Sons, 118 F.2d 576, 28 C.C.P.A., Patents, 1005; Lang-field v. Solvit-All Corporation, 49 F.2d 480, 18 C.C.P.A., Patents, 1313, 1315; Philadelphia Inquirer Co. v. Coe, 77 U.S. App.D.C. 39, 133 F.2d 385, certiorari denied, 318 U.S. 793, 63 S.Ct. 993, 87 L.Ed. 1158; Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972; L. E. Waterman Co. v. Gordon, 2 Cir., 72 F. 2d 272.

4. Cheek-Neal Coffee Co. v. Hal Dick Mfg. Co., 40 F.2d 106, 17 C.C.P.A., Patents, 1103, 1104.

5. The I. E. Palmer Co. v. Nashua Manufacturing Co., 34 F.2d 1002, 1005, 17 C. C.P.A., Patents, 583, 586.

6. The B. F. Goodrich Co. v. Hockmeyer, 40 F.2d 99, 17 C.C.P.A., Patents, 1068, 1075.

comer if the trade-mark, such as we have here, is arbitrary in character.[7]

We have likewise held by a unanimous decision that in legal contemplation, goods are of the same descriptive properties if the use of the same mark on the involved varieties of packaged merchandise would suggest to the purchaser that they have the same source of origin; that is, that they were made or sold by the same concern and came from the same place.[8] In other words, it is not the difference in the competing goods in cases like this that causes the likelihood of confusion; it is the similarity of the marks which are attached to the packaged goods leading one to believe that they have a common source of origin.

Purchasers of inexpensive goods such as washing and cleaning compounds are not expected to exercise the degree of care and discrimination in making their purchases as would be exercised in the selection by them of more expensive and rarely purchased articles.[9] Having taken no testimony, appellant failed to establish that it had spent anything whatever in advertising its goods. Even so, there was no legal requirement on the part of purchasers under the trade-mark law to make a side-by-side comparison of the goods and the competing marks in issue, had they known of appellant's product and trade-mark.[10]

Moreover, in view of the poison contained in appellant's product, the protection of the public interest should be here considered in resolving any existing doubt against the registration of the newcomer's mark. Under such circumstances, this court is interested in seeing not only that the purchaser makes no mistake himself, but also that he is not led into confusion or mistake by error of the clerk or grocer involved in the transaction.[11]

Not only was appellee's trade-mark "Duz" appropriated in its entirety but appellee's slogan "Does More," phonetically spelled, was particularly appropriated by appellant. The law is thoroughly established in this jurisdiction that an opposer to the registration of a newcomer's trade-mark is entitled to rely not only upon his own previously registered trade-marks, but also upon established trade-names, slogans, and designs analogous to a trade-mark use.[12]

The involved goods under the authorities hereinbefore cited are unquestionably, as the Acting Commissioner properly held, broadly of the same general class and are goods of the same descriptive properties. Appellant has contended, however, that appellee by its proof has shown no actual damage. It is elementary that, in an opposition proceeding, the issue does not require proof of damage as a result of actual confusion but only that the likelihood of confusion may exist. Moreover, as Judge Learned Hand, on the point in question, stated in Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972, 974: "However, it has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good

7. Lever Brothers Co. v. Sitroux Co., 109 F.2d 445, 27 C.C.P.A., Patents, 858.

8. Rice-Stix Dry Goods Co. v. Industrial Undergarment Corp., 152 F.2d 1011, 33 C.C.P.A., Patents, 813. See also Greyhound Corp. v. Robinson Houchin Corp., 89 U.S.P.Q. 621 at 624.

9. Lever Brothers Co. v. Riodela Chemical Co., 41 F.2d 408, 17 C.C.P.A., Patents, 1272.

10. Celanese Corp. of America v. Vanity Fair Silk Mills, 47 F.2d 373, 18 C.C.P.A., Patents, 958; Magitex Co., Inc., v. John Hudson Moore, Inc., 154 F.2d 177, 33 C.C.P.A., Patents, 956; Unfair Competition and Trade-Marks, by Harry D. Nims, Fourth Edition, 1947, page 1024.

11. Hoffman-La Roche, Inc., v. Kawerk, 148 F.2d 557, 32 C.C.P.A., Patents, 954; Schering & Glatz, Inc. v. Sharpe & Dohme, Inc., 146 F.2d 1019, 32 C.C.P.A., Patents, 827, 833.

12. Cheek-Neal Coffee Co. v. Hal Dick Mfg. Co., (Good to the Last Drop), 40 F.2d 106, 17 C.C.P.A., Patents, 1103, 1104; Central Iron & Steel Co. v. Republic Steel Corp., 102 F.2d 899, 26 C.C.P.A., Patents, 1091; Lucky Heart Laboratories, Inc., v. Neumann, 154 F.2d 519, 33 C.C.P.A., Patents, 1034.

or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful. * * *"

In view of the conclusion hereinbefore expressed, it is deemed unnecessary to discuss other points raised by the reasons of appeal or in the argument of counsel for the respective parties. Therefore, the decision of the Commissioner of Patents, for the reasons stated, is affirmed.

Affirmed.

GARRETT, Chief Judge, concurs in the conclusion.

JOHNSON and WORLEY, Judges, dissent.